IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| NAN WADSWORTH, MARK APANA, | ) | Civ. No. 08-00527 ACK-RLP |
| ELIZABETH VALDEZ KYNE, BERT | ) | |
| VILLON and STEPHEN WEST, on | ) | |
| behalf of themselves and all | ) | |
| others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| KSL GRANT WAILEA RESORT, INC.; | ) | |
| CNL RESORT LODGING TENANT CORP.; | ) | |
| CNL GRAND WAILEA RESORT, L.P.; | ) | |
| MSR RESORT LODGING TENANT, LLC; | ) | |
| HILTON HOTELS CORPORATION; | ) | |
| WALDORF-ASTORIA MANAGEMENT, LLC; | ) | |
| and BRE/WAILEA LLC dba GRAND | ) | |
| WAILEA RESORT HOTEL & SPA, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER DENYING DEFENDANTS' MOTION TO DISMISS COUNT V, GRANTING
DEFENDANTS' REQUEST TO STAY PROCEEDINGS AS MODIFIED, AND
ADMINISTRATIVELY CLOSING THIS CASE

FACTUAL BACKGROUND[1]

Plaintiffs Nan Wadsworth, Elizabeth Valdez Kyne, Bert

Villon, and Stephen West ("Plaintiffs"), brought suit on behalf

of a similarly situated class against a number of different

entities that have owned and operated the Grand Wailea Resort

---

[1] The facts as recited in this Order are for the purpose of
disposing of the current motion and are not to be construed as
findings of fact that the parties may rely on in future
proceedings in this case.

Hotel & Spa ("Grand Wailea Resort" or "Hotel") in Maui during the applicable statute of limitations period.  Second Am. Compl. ¶¶ 4-6.  Defendants include MSR Resort Lodging Tenant, LLC, KSL Grand Wailea Resort, Inc., Hilton Hotels Corp. ("Hilton"), Waldorf=Astoria Management LLC ("Waldorf=Astoria"), CNL Grand Wailea Resort, LP, and CNL Lodging Tenant Corp.[2/]  Id. ¶¶ 6-8. Plaintiffs have all worked as food and beverage servers for Defendants.  Id. ¶ 3.

Plaintiffs' Second Amended Complaint alleges that the Grand Wailea Resort provides food and beverage services throughout the Hotel, including in its banquet department, its restaurants, and through room service.  Id. ¶ 5.  Plaintiffs allege that Defendants have added a preset service charge to customers' bills for food and beverage served at the Hotel, but that Defendants have not remitted the total proceeds of the service charge as tip income to the employees who serve the food and beverages.  Id. ¶¶ 9-10.  Instead, Plaintiffs allege that the Defendants have had a policy and practice of retaining for themselves a portion of these service charges (or using it to pay managers or other non-tipped employees who do not serve food and

---

[2/]Plaintiffs also brought suit against Grand Wailea Resort's operator at the time the Second Amended Complaint was filed, BRE/Wailea, LLC ("BRE/Wailea").  Second Am. Compl. ¶ 6.  The parties subsequently stipulated to the dismissal of all claims against BRE/Wailea, which this Court approved and ordered on April 28, 2009.  Doc. No. 67.

beverages), without disclosing to the Hotel's customers that the services charges are not remitted in full to the employees who serve the food and beverages.[3/]  Id. ¶¶ 11-12.

Plaintiffs' Second Amended Complaint asserts five counts.  As a result of the Court's ruling on a previous motion to dismiss, the following counts remain:  Count II, in which Plaintiffs allege that Defendants' conduct constitutes unlawful intentional interference with contractual and/or advantageous relations; Count III, in which Plaintiffs allege that Defendants' conduct constitutes a breach of an implied contract between Defendants and Defendants' customers, of which Plaintiffs are third party beneficiaries;[4/] Count IV, in which Plaintiffs allege that Defendants have been unjustly enriched at Plaintiffs' expense under state common law; and Count V, in which Plaintiffs allege that as a result of Defendants' conduct, they have been deprived of income that constitutes wages, which is actionable under H.R.S. §§ 388-6, 388-10, and 388-11.  Count V is at issue

---

[3/]The Collective Bargaining Agreement ("CBA") between the Hotel and its employees provided that, on all special functions, employees shall receive 93% of the guaranteed service charge less employment taxes.  Defs.' Response to Pls.' CSF Ex. A.  There does not appear to be a dispute that Defendants kept 7% of service charges they imposed.

[4/]In Count III, Plaintiffs also asserted that Defendants breached an implied contract between Plaintiffs and Defendants. In a prior ruling, the Court dismissed this portion of Count III as preempted under federal labor law.  See 2010 WL 5146521 (Doc. No. 118).

in the instant motion.   Defendants move to dismiss Count V and

Plaintiffs move for summary judgment on Count V as to Defendants'

liability for unpaid wages, but not as to the amount of resulting

damages.

### PROCEDURAL BACKGROUND

On November 24, 2008, Plaintiffs filed a Class Action

Complaint.  Doc. No. 1.  On January 29, 2009, Plaintiffs filed an

Amended Class Action Complaint.  Doc. No. 19.  There were a

number of similar cases filed in this Court, and on January 23,

2009, Plaintiffs moved to consolidate or alternatively for

assignment of all the related cases to one judge pursuant to

Local Rule 40.2.[5/]  Doc. No. 16.  On April 8, 2009, this Court

adopted the Magistrate Judge's Findings and Recommendation that

the similar cases not be consolidated.  2009 WL 975769 (Doc. No.

56).[6/]

---

[5/]There are at least seven other similar cases that food and
beverage service employees have filed against their employers in
this District Court between November 21, 2008, and May 13, 2010.
These actions are: Davis v. Four Seasons Hotel, Ltd.,
Civ. No. 08-00525 HG-BMK (D. Haw. Nov. 21, 2008) (hereafter
"Davis I"); Apana v. Fairmont Hotels & Resorts (U.S.) Inc., Civ.
No. 08-00528 JMS-LEK (D. Haw. Nov. 24, 2008); Villon v. Marriott
Hotel Servs., Inc., Civ. No. 08-00529 LEK-RLP (D. Haw. Nov. 24,
2008); Kyne v. Ritz-Carlton Hotel Co., L.L.C., Civ. No. 08-00530
ACK-RLP (D. Haw. Nov. 24, 2008); Lara v. Renaissance Hotel
Operating Co., Civ. No. 08-00560 LEK-RLP (D. Haw. Dec. 10, 2008);
Rodriquez v. Starwood Hotels & Resorts Worldwide, Inc., 09-00016
LEK-RLP (D. Haw. Jan. 9, 2009); and Flynn v. Fairmont Hotels &
Resorts, Inc., Civ. No. 10-00285 DAE-LEK (D. Haw. May 13, 2010).

[6/]In that Findings and Recommendation, the Magistrate Judge
found that reassignment to the same district judge was not

4

On July 9, 2009, the Court stayed this case in light of Judge Gillmor's certification to the Hawaii Supreme Court of a question of law that was also important to the instant case.[7] See Doc. No. 71.  The Hawaii Supreme Court answered the certified question on March 29, 2010.  See Davis v. Four Seasons Hotel Ltd., 228 P.3d 303 (Haw. 2010) (hereafter "Davis II"). Accordingly, on April 16, 2010, Plaintiffs filed a motion to lift the stay and a motion to file a second amended complaint.  Doc. Nos. 73 & 74.  The Magistrate Judge granted both motions on June 22, 2010.  Doc. No. 89.  Plaintiffs filed their Second Amended Complaint on June 28, 2010.  Doc. No. 93.

On July 20, 2010, Defendants filed a Motion to Dismiss Second Amended Complaint.  Doc. No. 95.  On December 10, 2010, the Court granted the motion with respect to Count I, Plaintiffs'

---

warranted, but that the cases should be reassigned to one magistrate judge for more efficient case management.  See Doc. No. 37.

    [7]Judge Gillmor certified the following question:

    Where plaintiff banquet server employees allege that their employer violated the notice provision of H.R.S. § 481B-14 by not clearly disclosing to purchasers that a portion of a service charge was used to pay expenses other than wages and tips of employees, and where the plaintiff banquet server employees do not plead the existence of competition or an effect thereon, do the plaintiff banquet server employees have standing under H.R.S. § 480-2(e) to bring a claim for damages against their employer?

See Davis I, Civ. No. 08-00525 HG-LEK, Doc. No. 75.

unfair methods of competition claim, without prejudice and Count III, in so far as it alleged a breach of an implied contract between Plaintiffs and Defendants.  2010 WL 5146521 (Doc. No. 118).

On March 25, 2011, Plaintiffs filed a Motion to Certify Class.  Doc. No. 126.  On April 1, 2011, Defendants filed a Suggestion of Bankruptcy for MSR Golf Course LLC, et al., which acted to stay proceedings against all Defendants except Hilton and Waldorf=Astoria.[8/]  Doc. No. 128.  On July 18, 2011, the Court adopted the Magistrate Judge's Findings and Recommendation that the class be certified as "all non-managerial food and beverage employees who, from January 31, 2006 to the present, have worked at banquets, functions, other events, and small parties, where a service charge was imposed and where a part of that service charge was kept by the Defendants or management without adequate disclosure to customers" as to the non-debtor Defendants Hilton and Waldorf=Astoria (together "Defendants").[9/]

---

[8/]Defendants CNL Grand Wailea Resort, LP, CNL Resort Lodging Tenant Corp., and KSL Grand Wailea Resort, Inc. are each a subsidiary or affiliate of MSR Resort Golf Course LLC.  See Doc. No. 128.

[9/]Plaintiffs requested that the class be defined as "all non-managerial food and beverage service employees who, since November 24, 2002 have worked at banquets, functions, other events, and small parties, where a service charge was imposed and where a part of that service charge was kept by the Defendants or management without adequate disclosure to customers."  Doc. No. 126.  Hilton and Waldorf=Astoria, however, did not manage the Hotel prior to January 31, 2006.  See Doc. No. 149.

Doc. Nos. 149 & 150.

On June 1, 2011, Plaintiffs filed the instant Motion for Partial Summary Judgment ("Plaintiffs' Motion for Summary Judgment"). Doc. No. 143. The Motion was accompanied by a supporting memorandum ("Pls.' MSJ Mem.") and a concise statement of facts ("Pls.' CSF"). Doc. Nos. 144 & 145. On October 24, 2011, Defendants filed an opposition ("Defs.' Opp'n") and a response to Plaintiffs' CSF ("Defs.' Response to Pls.' CSF"). Doc. Nos. 155 & 156. Plaintiffs filed a reply on October 31, 2011 ("Pls.' Reply"). Doc. No. 157.

On June 1, 2011, Defendants filed a Motion to Dismiss Count V of the Second Amended Class Action Complaint or to Certify the Question to the Hawaii Supreme Court ("Defendants' Motion to Dismiss"). Doc. No. 146. The Motion was accompanied by a supporting memorandum ("Defs.' MTD Mem."). Doc. No. 146. Plaintiffs filed an opposition on October 24, 2011 ("Pls.' Opp'n"). Doc. No. 154. On October 31, 2011, Defendants filed a reply ("Defs.' Reply"). Doc. No. 158.

On November 14, 2011, the Court held a hearing on Defendants' request to stay proceedings, Plaintiffs' Motion for Partial Summary Judgment, and Defendants' Motion to Dismiss. The Court will address Plaintiffs' Motion in a separate order.

**STANDARD**

Federal Rule of Civil Procedure 12(b)(6) ("Rule

12(b)(6)") permits dismissal of a complaint that fails "to state a claim upon which relief can be granted." Under Rule 12(b)(6), review is generally limited to the contents of the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996). Courts may also "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). Documents whose contents are alleged in a complaint and whose authenticity is not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss. See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002). If a court converts a motion to dismiss into a motion for summary judgment, the court must give the parties notice and a reasonable opportunity to supplement the record. Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1408 (9th Cir. 1995).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir.

1996).  However, conclusory allegations of law, unwarranted
deductions of fact, and unreasonable inferences are insufficient
to defeat a motion to dismiss.  <u>See</u> <u>Sprewell</u>, 266 F.3d at 988;
<u>Nat'l Assoc. for the Advancement of Psychoanalysis v. Cal. Bd. of
Psychology</u>, 228 F.3d 1043, 1049 (9th Cir. 2000); <u>In re Syntex
Corp. Sec. Litig.</u>, 95 F.3d 922, 926 (9th Cir. 1996).  Moreover,
the court need not accept as true allegations that contradict
matters properly subject to judicial notice or allegations
contradicting the exhibits attached to the complaint.  <u>Sprewell</u>,
266 F.3d at 988.

In summary, to survive a Rule 12(b)(6) motion to
dismiss, "[f]actual allegations must be enough to raise a right
to relief above the speculative level . . . on the assumption
that all the allegations in the complaint are true (even if
doubtful in fact)."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,
555 (2007) (internal citations and quotations omitted).  "While a
complaint attacked by a Rule 12(b)(6) motion to dismiss does not
need detailed factual allegations . . . a plaintiff's obligation
to provide the 'grounds' of his 'entitlement to relief' requires
more than labels and conclusions, and a formulaic recitation of
the elements of a cause of action will not do."  <u>Id.</u> (internal
citations and quotations omitted).  Dismissal is appropriate
under Rule 12(b)(6) if the facts alleged do not state a claim
that is "plausible on its face."  <u>Id.</u> at 570.  "Determining

whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Id. (quoting Fed. R. Civ. P. 8(a)(2)).

"Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009) (internal quotation marks omitted).  "But courts have discretion to deny leave to amend a complaint for futility, and futility includes the inevitability of a claim's defeat on summary judgment."  Johnson v. Am. Airlines, Inc., 834 F.2d 721, 724 (9th Cir.1987) (citations and internal quotation marks omitted).

## DISCUSSION

The instant motions both involve the same issue of statutory interpretation – whether an employee may recover under H.R.S. §§ 388-6, 388-10, and 388-11, for the failure of a hotel to distribute service charges to employees when the hotel did not make disclosures required by H.R.S. § 481B-14.  The Court will first address Defendants' request that this Court stay proceedings in this case while the Hawaii Supreme Court considers

a certified question in a similar case.   The Court will then

address whether Count V states a plausible claim.

**I.**        **Defendants' Request to Stay Proceedings**

        On June 1, 2011, Defendants moved for this Court to

certify the following question to the Hawaii Supreme Court: "May

employees use Haw. Rev. Stat § 388-6 to seek damages for alleged

violations of the obligations created by Haw. Rev. Stat § 481B-

14?".   Defs.' MTD Mem. at 13.   Subsequently, on October 12, 2011,

Judge Kobayashi certified three questions to the Hawaii Supreme

Court in two similar cases, Villon v. Marriot Hotel Services,

Inc., CV-08-00529 LEK-RLP, Doc. No. 130 (Oct. 12, 2011), and

Rodriquez v. Starwood Hotels & Resorts Worldwide, Inc., CV-09-

00016 LEK-RLP, Doc. No. 139 (Oct. 12, 2011).   As relevant here,

Judge Kobayashi certified the following question:

> May food or beverage service employees of a
> hotel or restaurant bring a claim against
> their employer based on alleged violation of
> Haw. Rev. Stat. § 481B-14 by invoking Haw.
> Rev. Stat. §§ 388-6, 388-10, and 388-11 and
> without invoking Haw. Rev. Stat. §§ 480-2 or
> 480-13?[10/]

---

[10/]Judge Kobayashi also certified the following questions:

(1) "If food or beverage service employees of a hotel
or restaurant are entitled to enforce Haw. Rev. Stat. §
481B-14 through Haw. Rev. Stat. §§ 388-6, 388-10, and
388-11, what statute of limitations applies?"; and (2)
"May food and beverage service employees of a hotel or
restaurant bring a claim under Haw. Rev. Stat. § 480-
2(e) for an alleged violation of Haw. Rev. Stat.
§ 481B-14, where those employees have alleged that
their employer's conduct has caused them injury that

<u>Villon</u>, CV-08-00529 LEK-RLP, Doc. No. 130; <u>Rodriguez</u>, CV-09-00016 LEK-RLP, Doc. No. 139.

On November 8, 2011, the Hawaii Supreme Court issued an "Order on Certified Question," ordering the parties to submit briefing with respect to this question, but stated that it was ordering such action "without conclusively determining whether this court will answer" the certified question.  <u>See</u> Defs.' Supplemental Filing, Doc. No. 159 Ex. A.

Defendants acknowledge that Judge Kobayashi's certification renders Defendants' request for this Court to certify the question moot.  Defs.' Opp'n at 10.  Defendants request, however, that the Court administratively stay this action until the Hawaii Supreme Court rules on the question.  <u>Id.</u> Defendants assert that proceeding with the case at this time would be an inefficient use of judicial resources.  <u>Id.</u>

Plaintiffs oppose Defendants' request, asserting that Defendants will not suffer any harm, and have not asserted that they will suffer any harm, should this Court deny their request for a stay.  Pls.' Reply at 16-17.  Plaintiffs further assert that this case has previously been stayed for ten months pending certification of another state law question to the Hawaii Supreme

---

resulted from an unfair method of competition?"

The Hawaii Supreme Court declined to accept these two questions. <u>See</u> Defs.' Supplemental Filing, Doc. No. 159 Ex. A.

Court, and that, assuming the Hawaii Supreme Court takes the
question, the case would be put on hold for "possibly a year
while the parties brief the certified question and the Hawaii
Supreme Court issues its response." Id. at 17.

A district court has discretion to certify a question
to a state supreme court. Riordan v. State Farm Mut. Auto Ins.
Co., 589 F.3d 999, 1009 (9th Cir. 2009). The Ninth Circuit has
explained that it "request[s] certification not because a
difficult legal issue is presented but because of deference to
the state court on significant state law matters," and that it
has "an obligation to consider whether novel state-law questions
should be certified." Kremen v. Cohen, 325 F.3d 1035, 1037-38
(9th Cir. 2003). The Supreme Court has noted that certification
does, "in the long run save time, energy, and resources and helps
build a cooperative judicial federalism." Lehman Bros. v.
Schein, 416 U.S. 386, 390-91 (1974).

In Bellotti v. Baird, 428 U.S. 132 (1976), the Supreme
Court held that the district court should have certified
questions concerning the meaning of a state statute to the state
supreme court where potential interpretations of the statute
would have avoided or substantially modified the constitutional
challenge at issue. Id. at 146-51 ("In deciding this case, we
need go no further than the claim that the District Court should
have abstained pending construction of the statute by

Massachusetts courts."). The Supreme Court has also admonished both the Ninth Circuit and the district court for failure to certify a novel state law question. See <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 76-77 (1997) ("Both lower federal courts in this case refused to invite the aid of the Arizona Supreme Court because they found the language of Article XXVIII [of the Arizona Constitution] 'plain.' . . . A more cautious approach was in order."). With this admonishment in mind, the Ninth Circuit has certified a state law question to the Washington Supreme Court when the parties unanimously opposed certification. See <u>Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1</u>, 294 F.3d 1085, 1086 (9th Cir. 2002). The Ninth Circuit has also recognized that a certified question need not raise a constitutional issue. See <u>Kremen</u>, 325 at 1038 n.1, 1042. (certifying a state law question related to the tort of conversion). Nonetheless, the Ninth Circuit has held that "[e]ven where state law is unclear, resort to the certification process is not obligatory." <u>Riordan</u>, 589 F.3d at 1009.

It is also within the discretion of a district court to stay proceedings in its own court. <u>Lockyer v. Mirant Corp.</u>, 398 F.3d 1098, 1109 (9th Cir. 2005). This District Court has recognized that:

> A party seeking a stay . . . 'must make out a
> clear case of hardship or inequity in being
> required to go forward, if there is even a
> fair possibility that the stay for which he

> prays will work damage to someone else. Only
> in rare circumstances will a litigant in one
> case be compelled to stand aside while a
> litigant in another settles the rule of law
> that will define the rights of both.'

Davis I, Civ. No. 08-00525 HG-BMK, 2011 WL 5025485, at *2  (D.

Haw. Oct. 20, 2011) (quoting Lockyer, 398 F.3d at 1109).

In Davis I, Civ. No. 08-00525 HG-BMK, F. --- Supp. 2d -

---, 2011 WL 3841075 (D. Haw. Aug. 26, 2011), Judge Gillmor

similarly considered whether to stay the case in light of the

same question certified to the Hawaii Supreme Court in Villon and

Rodriquez.  Judge Gillmor denied the defendant's request to stay

the case, determining that the case was over three years old and

had already been stayed once for ten months pending the Hawaii

Supreme Court's ruling on a certified question; that although the

plaintiffs had requested certification of that question, the

defendant had opposed certification and had an opportunity to

submit briefing on the questions to be submitted; and that it was

unclear whether the certification of the questions would have any

impact on the case.  Davis I, 2011 WL 5025485, at *2.  Judge

Gillmor further explained that the Hawaii Supreme Court may

decline the certification and that the ultimate impact of the

resolution of the instant question might have was unclear.   Id.

Similarly, this case is nearly three years old and has

already been stayed once pending resolution of a certified

question by the Hawaii Supreme Court.  Since Judge Gillmor's

order in Davis I, the Hawaii Supreme Court has ordered briefing on the question potentially dispositive of the instant motions. Although more likely now, it does remain unclear when or if the Hawaii Supreme Court will answer the certified question because the court expressly declined to "conclusively determine" whether it would do so.  Id.  Also in contrast to the circumstances present in Davis I, Defendants have not previously opposed certification of the § 388-6 issue.  In summary, in Davis I, the plaintiffs, who are represented by the same counsel as Plaintiffs in this case, had requested certification to the Hawaii Supreme Court of the issue now before the Court, and the defendant in that case had opposed such certification;[11] whereas, in this case, the Defendants now request such certification and the Plaintiffs oppose it.

Significantly, neither the Court nor the parties were able to find an appellate decision approving of a lower court continuing with a case when a state supreme court had accepted a certified question on an important issue of law in that case.  It would be inefficient and a waste of resources to continue to trial and potentially the appellate process, and then have the Hawaii Supreme Court issue a decision inapposite to this Court's ruling.  With this consideration in mind, and in deference to the

---

[11]The Court notes that the defendant in Davis I is not represented by Defendants' counsel in this case.

Hawaii Supreme Court, who has ordered briefing on the certified question, the Court will stay the effect of the instant order, and administratively close the case, pending resolution of the question certified in Villon and Rodriquez.

## II.        **Whether Count V States a Plausible Claim**

Defendants effectively ask this Court to overrule its prior decision that Count V states a plausible claim.  See --- F. Supp. 2d ---- , 2010 WL 5146521 (Doc. No. 118).  In its prior decision, the Court determined that:

> For purposes of H.R.S. § 388, the statutory definition of wages includes tips, and because pursuant to H.R.S. § 481B-14 a service charge received by the employers without notice to the customers is deemed a tip, the employer holds that tip in trust for the employees as a conduit.  Therefore, the employees have a claim against the employer for compensation that has been withheld.

Id. at *12.  Defendants assert that their motion "presents an argument not made or addressed in [their] prior motion," and that this Court's ruling "merely held Plaintiffs' stated a claim that could survive a preemption attack, not based on a thorough analysis of the legislative history and other materials that the claim could proceed."  Defs.' MTD Mem. at 2; Defs.' Reply at 3.  Pursuant to Local Rule 60.1, motions for reconsideration of interlocutory orders may only be brought if there has been a discovery of new material facts not previously available, an intervening change in law, or a manifest error of law or fact.

Motions asserting a manifest error of law or fact must be made not more than fourteen days after the Court's written order is filed.  D. Haw. Local Rule 60.1.  Defendants did not seek reconsideration of the Court's previous order within the applicable time frame.

Additionally, under the "law of the case" doctrine, ordinarily, a court will not make rulings inconsistent with its prior decisions in the same case.  Although "law of the case" does not apply to issues or claims that were not actually decided, see Mortimer v. Baca, 594 F.3d 714, 721 (9th Cir. 2010), this Court expressly determined that Count V stated a plausible claim.  The "law of the case" also does not apply when "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial."  Id.  None of these circumstances are present in this case.  Nonetheless, application of the doctrine is discretionary, see United States v. Lummi Indian Tribe, 235 F.3d 443, 452 (9th Cir. 2000), and because the Court did not discuss its prior decision in depth, it will do so here.

### A.   Statutory Interpretation under Hawaii Law

The Court has diversity jurisdiction over this case pursuant to the Class Action Fairness Act, 28 U.S.C.

18

§ 1332(d)(2).   See Second Am. Compl. ¶ 2.   In Davis II, the

Hawaii Supreme Court addressed whether employees have standing to

enforce § 481B-14 through § 480-2(e), but declined to consider

whether §481B-14 is enforceable through §§ 386-6, 388-10, and

388-11 because "it [was] beyond the scope of the certified

question."   228 P.3d at 308 n.12.   Because the instant issue

raises a question not yet decided by the Hawaii Supreme Court,

this Court, "sitting in diversity, must use [its] best judgment

to predict how the Hawaii Supreme Court would decide [the]

issue."   Burlington Ins. Co. v. Oceanic Design & Constr., Inc.,

383 F.3d 940, 944 (9th Cir. 2004) (alterations in original)

(internal quotations omitted).

        The Hawaii Supreme Court instructs that "[w]hen

construing a statute, the starting point is the language of the

statute itself."   State v. Batson, 53 P.3d 257, 259 (Haw. 2002)

(internal quotation omitted).   A court "must read statutory

language in the context of the entire statute and construe it in

a manner consistent with its purpose."   Id. (internal quotations

omitted).   When statutes appear to relate to the same subject

matter, the Hawaii Supreme Court uses a three-step approach to

interpret those statutes.

> First, legislative enactments are
> presumptively valid and should be interpreted
> [in such a manner as] to give them effect.
> Second, [l]aws in pari materia, or upon the
> same subject matter, shall be construed with
> reference to each other.   What is clear in

> one statute may be called in aid to explain
> what is doubtful in another.  Third, where
> there is a "plainly irreconcilable" conflict
> between a general and a specific statute
> concerning the same subject matter, the
> specific will be favored.  However, where the
> statutes simply overlap in their application,
> effect will be given to both if possible, as
> repeal by implication is disfavored.

Batson, 53 P.3d 257, 259 (alterations in original) (internal

quotations and citations omitted).

The Hawaii Supreme Court has explained:  "It is a

cardinal rule of statutory interpretation that, where the terms

of a statute are plain, unambiguous and explicit, we are not at

liberty to look beyond that language for a different meaning.

Instead, our sole duty is to give effect to the statute's plain

and obvious meaning."  T-Mobile USA v. Cnty. of Hawaii Planning

Comm'n, 104 P.3d 930, 939-40 (Haw. 2005) (internal quotations

omitted).  An ambiguity exists "[w]hen there is doubt, doubleness

of meaning, or indistinctiveness or uncertainty of an expression

used in a statute."  State v. Reis, 165 P.3d 980, 985 (Haw. 2007)

(internal quotations omitted).  If there is ambiguity, the court

"may resort to extrinsic aids in determining legislative intent,"

one of which is legislative history."  Gillan v. Gov't Emps. Ins.

Co., 194 P.3d 1071, 1081 (Haw. 2008) (internal quotations

omitted).

### B.   The Statutory Framework

H.R.S. § 388-6, titled "Withholding of wages," provides

20

that:  "No employer may deduct, retain, or otherwise require to

be paid, any part or portion of any compensation earned by any

employee except where required by federal or state statute or by

court process or when such deductions or retentions are

authorized in writing by the employee."[12/]   Chapter 388 defines

wages, in relevant part, as follows:

> "Wages" means compensation for labor or
> services rendered by an employee, whether the
> amount is determined on a time, task, piece,
> commission, or other basis of calculation.
> . . . but shall not include tips or
> gratuities of any kind, provided that for the

---

[12/]Defendants assert in a footnote of their reply supporting
their motion to dismiss that because Plaintiffs' union agreed
that the Hotel could keep seven percent of the banquet service
charges, there is an authorization in writing that "dooms
[Plaintiffs'] claim."  Defs.' Reply at 6 n.1.  The CBA, which
Defendants attached to their Response to Plaintiffs' CSF as
Exhibits A-B, is not a proper subject of judicial notice and thus
the Court cannot consider it in deciding Defendants' Motion to
Dismiss.  See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule
12(b)(6) or 12(c), matters outside the pleadings are presented to
and not excluded by the court, the motion must be treated as one
for summary judgment under Rule 56.").  The Court declines to
convert the Motion to Dismiss to a motion for summary judgment
(which would have required notice of the Court's intention and an
opportunity for the parties to supplement the record).  In any
event, the Court has already rejected this argument.  "[I]f under
state law a waiver of rights is permissible, 'the CBA must
include clear and unmistakable language waiving the covered
employee's state right for a court to even consider whether it
could be given effect.'"  2010 WL 5146521, at *8 (Doc. No. 118)
(quoting Valles v. Ivy Hill Corp., 410 F.3d 1071, 1076 (9th Cir.
2005)).  The Court specifically concluded that although § 388-6
appears to contain a partial waiver provision, "Defendants have
not come forth with any evidence that there has been any clear
and unmistakable waiver in the CBA as they are required to if
they seek to assert a party has waived a state-law right."  Id.
at *14.  Since the Court's prior ruling, Defendants have produced
no new evidence regarding any alleged waiver.

> purposes of section 388-6, "wages" shall
> include tips or gratuities of any kind.

H.R.S. § 388-1.

"Any employer who fails to pay wages in accordance with [Chapter 388] without equitable justification" is liable to the unpaid employee for twice the amount of the unpaid wages.  H.R.S. § 388-10.  Section 388-11 provides an employee or class of employees with a cause of action to recover unpaid wages.

Pursuant to § 481B-4, if a person violates a provision of Chapter 481B, the person is deemed to have engaged in an unfair method of competition.  One such provision, § 481B-14, requires that:

> Any hotel or restaurant that applies a
> service charge for the sale of food or
> beverage services shall distribute the
> service charge directly to its employees as
> tip income or clearly disclose to the
> purchaser of the services that the service
> charge is being used to pay for costs or
> expenses other than wages and tips of
> employees.

The interplay between Chapter 388 and § 481B-14 is at issue in the instant motion.

## C.   The Parties' Arguments

Defendants argue that Count V does not state a plausible claim because the only law that requires employers to pay service charges to its employees is § 481B-14, and Plaintiffs cannot enforce this provision through Chapter 388.  Defs.' MTD Mem. at 3.  Specifically, Defendants assert that "the term

22

'compensation earned'[in § 388-6] refers to monies that employees
actually earn," and "[b]y contrast, service charges are property
of the Hotel that imposes them in contrast to tips which are a
discretionary payment from the customer to server." Defs.' Opp'n
at 6-7; see Defs.' Reply at 6-7.  Defendants assert that the
distribution of service charges to its employees is regulated by
the applicable Collective Bargaining Agreement ("CBA") and that
any additional payment required under § 481B-14 is not
compensation earned by employees but a penalty imposed on
Defendants.  Defs.' Reply at 7-8.  Defendants further argue that
to allow employees to recover the service charges would
"encourage and allow employees to circumvent the pleading and
proof requirements of Davis by not pleading claims under Haw.
Rev. Stat § 481B-14."  Defs.' MTD Mem. at 5.  Defendants rely on
the legislative history of § 481B-14, asserting that the
legislature intended for § 481B-14 to be enforceable exclusively
through Chapter 480.  Id. at 10.  Defendants aver that Plaintiffs
erroneously rely on the title of H.B. No. 2123, the bill that
eventually became § 481B-14, which is "Relating to Wages and Tips
of Employees."  Defs.' Reply at 14.  Defendants argue that the
title is insignificant because the Hawaii Legislative Drafting
Manual indicates that each bill gets a title and that titles
should not be amended.  Id.

       Plaintiffs assert that Defendants' argument ignores the

23

clear, unambiguous language of the relevant statutes.  Pls.'
Opp'n at 5-6.  Plaintiffs contend that under the plain language
of § 481B-14, service charges must be distributed in full to
employees as tip income, unless the hotel or restaurant falls
under the provision's "narrow exception" by clearly disclosing to
its customers "that the service charge is being used to pay for
costs or expenses other than wages and tips of employees."  Id.
at 7.  Plaintiffs assert that this "tip income" constitutes
"wages" for purposes of § 388-6.  Id. at 8.  Plaintiffs argue
that a separate finding of liability on a claim brought under
Chapter 481B is not a prerequisite for an employee to be able to
recover the withheld "tip income."  Id. at 11.  Plaintiffs assert
that there is no indication from the legislative history that an
independent claim under § 388-6 could not be brought, and that
the legislative history supports a "harmonious reading of § 481B-
14 and § 388-6."  Id. at 12.   Plaintiffs assert that the title
of H.B. No. 2123, "Relating to Wages and Tips of Employees,"
"alone refutes" Defendants' argument that the Act was never
intended to have any effect on the wages and tips of employees.
Id.

### D.  Application

    This Court concludes that the Hawaii Supreme Court
would determine that there is not "doubt, doubleness of meaning,
or indistinctiveness or uncertainty of an expression used in [§

24

388-6]," and thus the statute is not ambiguous.  See Reis, 165 P.3d at 985.  Under the plain meaning of §§ 388-6, 388-10, and 388-11, employees may recover for service charges withheld without the requisite disclosure provided for in § 481B-14.

Pursuant to § 388-6, "[n]o employer may . . . retain . . . any part or portion of any compensation earned by any employee."  In § 388-1, wages is defined, in part, as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation."  Section 388-1 goes on to provide that wages "shall not include tips or gratuities of any kind, provided that for the purposes of section 388-6, 'wages' shall include tips or gratuities of any kind."  The explicit inclusion of tips and gratuities, and the modifier "of any kind" demonstrate a broad and inclusive definition of wages.  See Do Sung Uhm v. Humana, Inc., 620 F.3d 1134, 1153 (9th Cir. 2010) ("[U]se of the word 'any' 'suggests a broad meaning' because '[r]ead naturally, the word "any" has an expansive meaning, that is, one or some indiscriminately of whatever kind.'" (alterations in original) (quoting Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 218-19 (2008))); see e.g., Heatherly v. Hilton Hawaiian Village Joint Venture, 893 P.2d 779, 784 (Haw. 1995) (citing §§ 388-1 and 388-6 after stating that "[w]e observe that our state legislature knows how to draft broader definitions of the term 'wages' for purposes other than determining whether

25

minimum wage requirements have been met").

        The legislature provided that if a hotel or restaurant
does not make the requisite disclosure regarding service charges,
the hotel or restaurant "shall distribute the service charge
directly to its employees as tip income."  H.R.S. § 482B-14.  The
use of the word "shall" establishes that the distribution is
mandatory and the use of the word "directly" establishes the
distribution should take place immediately.  See Dejetley v.
Kaho'ohalahala, 226 P.3d 421, 433 (Haw. 2010) ("This court has
held that 'shall' indicates mandatory language."); Black's Law
Dictionary (9th ed. 2009) (defining "directly" as
"[i]mmediately").  Thus, contrary to Defendants' assertions, as
previously indicated by this Court, service charges imposed
without the requisite disclosures are not the property of the
Hotel.  See 2010 WL 5146521 (Doc. No. 118) ("[B]ecause pursuant
to H.R.S. § 481B-14 a service charge received by the employers
without notice to the customers is deemed a tip, the employer
holds that tip in trust for the employees as a conduit").

        Defendants further contend that § 388-6 should be
considered in isolation of § 481B-14 because the provisions
relate to different subjects and thus cannot be read "in pari
materia."  H.R.S. § 1-16 provides that "[l]aws in pari materia,
or upon the same subject matter, shall be construed with
reference to each other.  See Albert v. Dietz, 283 F. Supp. 854,

26

856 (D. Haw. 1968) ("It is solidly established under the Hawaii law that statutes having reference to the same subject matter are in pari materia and are to be construed with reference to each other."). In <u>Davis I</u>, Judge Gillmor stated that § 481B-14 "was originally drafted as an amendment to [§] 388-6, and it plainly addresses a similar subject matter." <u>Davis I</u>, 2011 WL 3841075, at *5. This Court agrees because both statutes, by their plain language, refer to the payment of compensation to employees.

The parties argue over the relevant meaning of the title of H.B. No. 2123, "Relating to Wages and Tips of Employees." In support of their argument, Plaintiffs cite Article III, Section 15 of the Hawaii State Constitution, which states, in relevant part: "Each law shall embrace but one subject, which shall be expressed in its title."[13] Pls.' Opp'n at 12. Defendants assert that the title is of no use because of the Hawaii Legislative Drafting Manual, which states a veto message and Attorney General Letter Opinion "indicate that titles [of bills] should not amended." Defs.' Reply at 14, Ex. B.

It is not necessary to ignore the title of H.B. No. 2123. Significantly, after noting the title of H.B. No. 2123 was

---

[13]The purposes of Article III, Section 15 are "[f]irst, to prevent hodge-podge or logrolling legislation, second, to prevent surprise or fraud upon the Legislature by means of provisions in bills of which titles give no intimation; and third, to apprise the people of proposed matters of legislation. <u>Schwab v. Ariyoshi</u>, 564 P.2d 135, 139 (Haw. 1977) (internal quotations omitted).

"Relating to Wages and Tips of Employees," the Hawaii Supreme Court stated that "although we believe the title is instructive in that it appears to reflect the legislature's concern that employees may not always be receiving the service charges imposed by their employers, we do not believe it is dispositive of the issue of whether the legislature intended to afford Employees standing to sue for HRS § 481B-14 violations." Davis II, 228 P.3d at 313 (emphasis added).   Moreover, in Davis II, the Hawaii Supreme Court concluded that, in enacting § 481B-14, the legislature was addressing its concern that both employees and consumers can be negatively impacted when a hotel withholds service charges and does not disclose that it is doing so.   Id. at 314 (emphasis added).   Although the title is not dispositive of the issue whether the two provisions here consider the same subject matter, it, along with the Hawaii Supreme Court's discussion in Davis II, provide further support for the Court's conclusion that the statutes both refer to employee compensation and thus can be read in pari materia.[14]

Defendants' argument that the distribution of service

_____

[14]The Court also notes that if Article III, Section 15, is violated, the statute is unconstitutional under Hawaii law.   See State v. Kantner, 493 P.2d 306, 308 (Haw. 1972); In re Goddard, 35 Haw. 203, 207 (1939) ("It is well-settled by decisions of this court that the provision of the Organic Law, [the predecessor to Article III, Section 15], is mandatory and the disregarding of it by the legislature renders its act nugatory.").   Thus, Article III, Section 15 would clearly trump the Legislative Drafting Manual.

charges as "tip income" pursuant to § 481B-14 is really a punishment and therefore not recoverable by employees under Chapter 388 is similarly misplaced.  Employers have a choice to either disclose that the service charges are not going to employees as wages or tips, or pay the service charges to employees as "tip income."  Employers are subject to "punishment" only if they fail to make the requisite disclosures <u>and</u> fail to pay service charges to employees.  In such a situation, employees are able to recover the unpaid tip income pursuant to Chapter 388, which "[c]learly . . . provides remedies when an employer fails to pay an employee in full."  <u>Smith v. Chaney Brooks Realty, Inc.</u>, 865 P.2d 170, 175 (Haw. App. 1994).

The Court is not persuaded by Defendants' argument that the service charges imposed without the requisite disclosure is not "compensation earned."  <u>See</u> Defs.' Reply at 6-7.  The employees entitled to receive the service charges earned them by providing service at the applicable event.[15/]  Section 481B-14 presumes that customers, in addition to paying the service charge, will separately tip employees if the customers know the full service charge is not going to the employees.  Thus,

---

[15/]Section 481B-14 does not identify what "employees" are to receive the service charge.  As determined in, <u>Rodriguez v. Starwood</u>, Civ. No. 09-0016 LEK-RLP, however, "it is clear that the Hawaii Legislature intended for the statute to cover serving employees who would otherwise be tipped."  <u>Id.</u> Doc. No. 93, at 22.

employees either receive the full service charge or presumably some extra tip, both as remuneration for employees' services rendered at the relevant event.

Defendants assert that use of the undefined term "tip income" in § 481B-14 renders the undisclosed service charges as neither wages nor tips. Judge Kobayashi has stated that she was "inclined to conclude that there is 'doubt, . . . indistinctiveness or uncertainty of an expression used in a statute,' namely the term 'tip income' in § 481B-14," and thus it was appropriate to consult legislative history. <u>Villon</u>, Civ. No. 08-00529 LEK-RLP, Doc. No. 125, at 28-29 (alteration in original). This Court respectfully disagrees and concludes that "tip income" falls within the ambit of "compensation for labor or services rendered . . ., includ[ing] tips or gratuities of any kind." If anything, use of the word "income" demonstrates that the service charges at issue are meant to be compensation. <u>See e.g.</u>, Webster's Ninth New Collegiate Dictionary 610 (1986) (defining "income" as: "a gain or recurrent benefit usu[ally] measured in money that derives from capital or labor"); Black's Law Dictionary (9th ed. 2009) (defining "income" as: "[t]he money or other form of payment that one receives, usu[ally] periodically, from employment, investments, royalties, gifts, and the like"). Considering the context of the term income in § 481B-14, it can only reasonably refer to money that the

employees should receive in turn for their services.  After providing that employers shall distribute service charges as "tip income," the next phrase in the provision gives the employer the option to "clearly disclose to the purchaser of the services that the service charge is being used to pay for costs or expenses other than wages and tips of employees."

        Because the plain language of the relevant statutes allows Plaintiffs to pursue their claim under § 388-6, and this literal interpretation does not produce an absurd or unjust result, it is unnecessary to consider the legislative history. See Davis I, 2011 WL 3841075, at *7 ("Unless the literal interpretation of a statute would 'produce absurd or unjust results that are clearly inconsistent with the purposes and policies of the statute,' it must be given effect.") (quoting Kang v. State Farm Mut. Auto Ins. Co., 815 P.2d 1020, 1021-22 (Haw. 1991)); Hui Malama I Na Kupuna O Nei v. Wal-Mart, 223 P.3d 236, 244 (Haw. 2009) ("[W]e need not examine the legislative history of a statute, if the statute, on its face, is plain and unambiguous and can be given effect."); Cieri v. Leticia Query Realty, Inc., 905 P.2d 29, 42 (Haw. 1995) ("[W]here the language of the statute is plain and unambiguous, our only duty is to give effect to is plain and obvious meaning.") (internal quotations omitted).  Nonetheless, in the alternative, the Court concludes the legislative history of § 481B-14 allows for recovery of

unpaid and undisclosed service charges via § 388-6.

In <u>Davis II</u>, the Hawaii Supreme Court performed an in depth review of the legislative history of § 481B-14, and determined that "[i]n sum, the legislative history of H.B. No. 2123 indicates that the legislature was concerned that when a hotel or restaurant withholds a service charge without disclosing to consumers that it is doing so, <u>both employees and consumers can be negatively impacted</u>." <u>Davis II</u>, 228 P.3d at 314 (emphasis added). Albeit the Hawaii Supreme Court was considering whether employees could bring an action under Chapter 481B, the court further concluded that "the legislative history of HRS § 481B-14 does not reflect an intent to preclude enforcement by employees." <u>Id.</u> at 312. This Court agrees with Judge Gillmor's analysis in <u>Davis I</u>, that:

> The legislative history of section 481B-14 reflects a desire to prevent service workers from being deprived of tip income. To the extent that the legislative history of section 481B-14 is relevant to the question of whether employees may sue for unpaid wages under section 388-6 based on violations of section 481B-14, that legislative history, as interpreted by the Hawaii Supreme Court in <u>Davis</u>, provides support for the idea that employees may do so.

<u>Davis I</u>, 2011 WL 3841075, at *8 (internal citations omitted).

The Court agrees with the three other judges who have concluded that § 388-6 provides employees with a cause of action to recover withheld "tip income" owed to them by employers

pursuant to § 481B-14.  See Davis I, 2011 WL 3841075 (Judge

Gillmor); Rodriquez, Civ. No. 09-0016 LEK-RLP, Doc. No. 93 (Judge

Ezra); Gurrobat v. HTH Corp., Civ. No. 08-1-2528-12, Doc. No. 146

(Haw. 1st Cir. Nov. 18, 2010) (Judge Sakamoto); but see Villon,

CV-08-00529 LEK-RLP, Doc. No. 125, at 46 (Sept. 8, 2011)

(explaining the reasons that "this Court is inclined to find that

Plaintiffs' unpaid wages claim, which seeks to enforce violations

of § 481B-14 through §§ 388-6, 388-10, and 388-11, fails as a

matter of law and does not state a claim upon which relief can be

granted").[16/17/]

       Count V states a plausible claim and the Court DENIES

Defendants' Motion to Dismiss Count V.

**CONCLUSION**

_____

       [16/]In her Rodriquez order granting the defendant's motion to
certify questions to the Hawaii Supreme Court, Judge Kobayashi
indicated her disagreement with Judge Ezra's earlier ruling that
plaintiffs may pursue a claim under Chapter 388 based on the
defendant's failure to comply with § 481B-14.  See Rodriquez,
Civ. No. 09-00016 LEK-RLP, Doc. No. 134.

       [17/]In Davis I, Judge Gillmor stated that H.R.S. § 481B-14
"expressly codifies the wage entitlement. . . . But service
employees would arguably be entitled to this income even without
H.R.S. § 481B-14." Davis I, 2011 WL 5025485, at *3.  In their
opposition, Plaintiffs cite this statement.  Pls.' Opp'n at 9-10.
They do not, however, cite any other authority for this
proposition or further develop this argument.  Although
unnecessary to deciding this motion to dismiss because of the
Court's conclusion that Plaintiffs' can rely on § 481B-14 in
asserting a claim under Chapter 388, the Court notes it
respectfully disagrees with Judge Gillmor's statement.  Without
§ 481B-14, the employees would have no entitlement to the service
charges as any type of income, and thus the charges would not
constitute "compensation earned."

For the foregoing reasons the Court(1) DENIES Defendants' Motion to Dismiss Count V and (2) GRANTS Defendants' request to stay further proceedings in this case as modified.

The Court orders a stay of all proceedings pending a decision by the Hawaii Supreme Court on the question of law certified to it by Judge Kobayashi in <u>Villon v. Marriot Hotel Services, Inc.</u>, CV-08-00529 LEK-RLP, Doc. No. 130 (Oct. 12, 2011), and <u>Rodriguez v. Starwood Hotels & Resorts Worldwide, Inc.</u>, CV-09-00016 LEK-RLP, Doc. No. 139 (Oct. 12, 2011).  The Clerk of Court is directed to administratively close this action without prejudice to any party.  The closing is administrative only and thus has no effect on the procedural or substantive rights of any party or any limitations period.  Any party may move to reopen the case after the Hawaii Supreme Court rules, and the parties shall promptly inform this court in writing of the disposition in Judge Kobayashi's case, at which time the stay will be automatically dissolved if not earlier.  The instant order will not go into effect until after the stay is dissolved.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 2, 2011.



_____
Alan C. Kay
Sr. United States District Judge

<u>Wadsworth v. KSL Grand Wailea Resort, Inc.</u>, Civ. No. 08-00527 ACK-RLP: Order Denying Defendants' Motion to Dismiss, Granting Defendants' Request to Stay Proceedings as Modified, and Administratively Closing this Case.