IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

NAN WADSWORTH, MARK APANA,      )  Civ. No. 08-00527 ACK-RLP
ELIZABETH VALDEZ KYNE, BERT     )
VILLON and STEPHEN WEST, on     )
behalf of themselves and all    )
others similarly situated,      )
                                )
            Plaintiffs,         )
                                )
      vs.                       )
                                )
KSL GRANT WAILEA RESORT, INC.;  )
CNL RESORT LODGING TENANT CORP.;)
CNL GRAND WAILEA RESORT, L.P.;  )
MSR RESORT LODGING TENANT, LLC; )
HILTON HOTELS CORPORATION;      )
WALDORF-ASTORIA MANAGEMENT, LLC;)
and BRE/WAILEA LLC dba GRAND    )
WAILEA RESORT HOTEL & SPA,      )
                                )
            Defendants.         )
_____ )

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

**FACTUAL BACKGROUND**[1]

Plaintiffs Nan Wadsworth, Elizabeth Valdez Kyne, Bert

Villon, and Stephen West ("Plaintiffs"), brought suit on behalf

of a similarly situated class against a number of different

entities that have owned and operated the Grand Wailea Resort

Hotel & Spa ("Grand Wailea Resort" or "Hotel") in Maui during the

_____

[1]The facts as recited in this Order are for the purpose of
disposing of the current motion and are not to be construed as
findings of fact that the parties may rely on in future
proceedings in this case.

applicable statute of limitations period.  Second Am. Compl.
¶¶ 4-6.  Defendants include MSR Resort Lodging Tenant, LLC, KSL
Grand Wailea Resort, Inc., Hilton Hotels Corp. ("Hilton"),
Waldorf=Astoria Management LLC ("Waldorf=Astoria"), CNL Grand
Wailea Resort, LP, and CNL Lodging Tenant Corp.[2/]  Id. ¶¶ 6-8.
Plaintiffs have all worked as food and beverage servers for
Defendants.  Id. ¶ 3.

Plaintiffs' Second Amended Complaint alleges that the
Grand Wailea Resort provides food and beverage services
throughout the Hotel, including in its banquet department, its
restaurants, and through room service.  Id. ¶ 5.  Plaintiffs
allege that Defendants have added a preset service charge to
customers' bills for food and beverage served at the Hotel, but
that Defendants have not remitted the total proceeds of the
service charge as tip income to the employees who serve the food
and beverages.  Id. ¶¶ 9-10.  Instead, Plaintiffs allege that the
Defendants have had a policy and practice of retaining for
themselves a portion of these service charges (or using it to pay
managers or other non-tipped employees who do not serve food and
beverages), without disclosing to the Hotel's customers that the

---

[2/]Plaintiffs also brought suit against Grand Wailea Resort's
operator at the time the Second Amended Complaint was filed,
BRE/Wailea, LLC ("BRE/Wailea").  Second Am. Compl. ¶ 6.  The
parties subsequently stipulated to the dismissal of all claims
against BRE/Wailea, which this Court approved and ordered on
April 28, 2009.  Doc. No. 67.

services charges are not remitted in full to the employees who
serve the food and beverages.[3/]  Id. ¶¶ 11-12.

        Plaintiffs' Second Amended Complaint asserts five
counts.  As a result of the Court's ruling on a previous motion
to dismiss, the following counts remain:  Count II, in which
Plaintiffs allege that Defendants' conduct constitutes unlawful
intentional interference with contractual and/or advantageous
relations; Count III, to the extent Plaintiffs allege that
Defendants' conduct constitutes a breach of an implied contract
between Defendants and Defendants' customers, of which Plaintiffs
are third party beneficiaries; Count IV, in which Plaintiffs
allege that Defendants have been unjustly enriched at Plaintiffs'
expense under state common law; and Count V, in which Plaintiffs
allege that as a result of Defendants' conduct, they have been
deprived of income that constitutes wages, which is actionable
under H.R.S. §§ 388-6, 388-10, and 388-11.  Count V is at issue
in the instant motion.  Plaintiffs move for summary judgment on
Count V as to Defendants' liability for unpaid wages, but not as
to the amount of resulting damages.

                    **PROCEDURAL BACKGROUND**

_____

        [3/]The Collective Bargaining Agreement ("CBA") between the
Hotel and its employees provided that, on all special functions,
bargaining unit employees shall receive 93% of the guaranteed
service charge less employment taxes.  Defs.' Response to Pls.'
CSF Ex. A.  There does not appear to be a dispute that Defendants
kept 7% of service charges they imposed.

3

On November 24, 2008, Plaintiffs filed a Class Action Complaint.  Doc. No. 1.  On January 29, 2009, Plaintiffs filed an Amended Class Action Complaint.  Doc. No. 19.  There were a number of similar cases filed in this Court, and on January 23, 2009, Plaintiffs moved to consolidate or alternatively for assignment of all the related cases to one judge pursuant to Local Rule 40.2.[4/]  Doc. No. 16.  On April 8, 2009, this Court adopted the Magistrate Judge's Findings and Recommendation that the similar cases not be consolidated.  2009 WL 975769 (Doc. No. 56).[5/]

On July 9, 2009, the Court stayed this case in light of Judge Gillmor's certification to the Hawaii Supreme Court of a

---

[4/]There are at least seven other similar cases that food and beverage service employees have filed against their employers in this District Court between November 21, 2008, and May 13, 2010. These actions are: Davis v. Four Seasons Hotel, Ltd., Civ. No. 08-00525 HG-BMK (D. Haw. Nov. 21, 2008) (hereafter "Davis I"); Apana v. Fairmont Hotels & Resorts (U.S.) Inc., Civ. No. 08-00528 JMS-LEK (D. Haw. Nov. 24, 2008); Villon v. Marriott Hotel Servs., Inc., Civ. No. 08-00529 LEK-RLP (D. Haw. Nov. 24, 2008); Kyne v. Ritz-Carlton Hotel Co., L.L.C., Civ. No. 08-00530 ACK-RLP (D. Haw. Nov. 24, 2008); Lara v. Renaissance Hotel Operating Co., Civ. No. 08-00560 LEK-RLP (D. Haw. Dec. 10, 2008); Rodriquez v. Starwood Hotels & Resorts Worldwide, Inc., 09-00016 LEK-RLP (D. Haw. Jan. 9, 2009); and Flynn v. Fairmont Hotels & Resorts, Inc., Civ. No. 10-00285 DAE-LEK (D. Haw. May 13, 2010).

[5/]In that Findings and Recommendation, the Magistrate Judge found that reassignment to the same district judge was not warranted, but that the cases should be reassigned to one magistrate judge for more efficient case management.  See Doc. No. 37.

question of law that was also important to the instant case.[6/]
See Doc. No. 71.  The Hawaii Supreme Court answered the certified
question on March 29, 2010.  See Davis v. Four Seasons Hotel
Ltd., 228 P.3d 303 (Haw. 2010) (hereafter "Davis II").
Accordingly, on April 16, 2010, Plaintiffs filed a motion to lift
the stay and a motion to file a second amended complaint.  Doc.
Nos. 73 & 74.  The Magistrate Judge granted both motions on June
22, 2010.  Doc. No. 89.  Plaintiffs filed their Second Amended
Complaint on June 28, 2010.  Doc. No. 93.

On July 20, 2010, Defendants filed a Motion to Dismiss
Second Amended Complaint.  Doc. No. 95.  On December 10, 2010,
the Court granted the motion with respect to Count I, Plaintiffs'
unfair methods of competition claim, without prejudice and Count
III, in so far as it alleged a breach of an implied contract
between Plaintiffs and Defendants.  2010 WL 5146521 (Doc. No.
118).

---

[6/]Judge Gillmor certified the following question:

Where plaintiff banquet server employees allege that
their employer violated the notice provision of H.R.S.
§ 481B-14 by not clearly disclosing to purchasers that
a portion of a service charge was used to pay expenses
other than wages and tips of employees, and where the
plaintiff banquet server employees do not plead the
existence of competition or an effect thereon, do the
plaintiff banquet server employees have standing under
H.R.S. § 480-2(e) to bring a claim for damages against
their employer?

See Davis I, Civ. No. 08-00525 HG-LEK, Doc. No. 75.

On March 25, 2011, Plaintiffs filed a Motion to Certify Class.  Doc. No. 126.  On April 1, 2011, Defendants filed a Suggestion of Bankruptcy for MSR Golf Course LLC, et al., which acted to stay proceedings against all Defendants except Hilton and Waldorf=Astoria.[7/]  Doc. No. 128.  On July 18, 2011, the Court adopted the Magistrate Judge's Findings and Recommendation that the class be certified as "all non-managerial food and beverage employees who, from January 31, 2006 to the present, have worked at banquets, functions, other events, and small parties, where a service charge was imposed and where a part of that service charge was kept by the Defendants or management without adequate disclosure to customers" as to the non-debtor Defendants Hilton and Waldorf=Astoria (together "Defendants").[8/]  Doc. Nos. 149 & 150.

On June 1, 2011, Plaintiffs filed the instant Motion for Partial Summary Judgment ("Plaintiffs' Motion for Summary Judgment").  Doc. No. 143.  The Motion was accompanied by a

---

[7/]Defendants CNL Grand Wailea Resort, LP, CNL Resort Lodging Tenant Corp., and KSL Grand Wailea Resort, Inc. are each a subsidiary or affiliate of MSR Resort Golf Course LLC.  See Doc. No. 128.

[8/]Plaintiffs requested that the class be defined as "all non-managerial food and beverage service employees who, since November 24, 2002 have worked at banquets, functions, other events, and small parties, where a service charge was imposed and where a part of that service charge was kept by the Defendants or management without adequate disclosure to customers."  Doc. No. 126.  Hilton and Waldorf=Astoria, however, did not manage the Hotel prior to January 31, 2006.  See Doc. No. 149.

supporting memorandum ("Pls.' MSJ Mem.") and a concise statement of facts ("Pls.' CSF").  Doc. Nos. 144 & 145.  On October 24, 2011, Defendants filed an opposition ("Defs.' Opp'n") and a response to Plaintiffs' CSF ("Defs.' Response to Pls.' CSF"). Doc. Nos. 155 & 156.  In their opposition, Defendants requested the Court stay proceedings pending the Hawaii Supreme Court's resolution of a question of law certified to it by Judge Kobayashi in a similar case.  Defs.' Opp'n at 9-10.  Plaintiffs filed a reply on October 31, 2011 ("Pls.' Reply").  Doc. No. 157.

On June 1, 2011, Defendants filed a Motion to Dismiss Count V of the Second Amended Class Action Complaint or to Certify the Question to the Hawaii Supreme Court ("Defendants' Motion to Dismiss").  Doc. No. 146.  The Motion was accompanied by a supporting memorandum ("Defs.' MTD Mem.").  Doc. No. 146. Plaintiffs filed an opposition on October 24, 2011 ("Pls.' Opp'n").  Doc. No. 154.  On October 31, 2011, Defendants filed a reply ("Defs.' Reply").  Doc. No. 158.

On November 14, 2011, the Court held a hearing on Defendants' request to stay proceedings, Plaintiffs' Motion for Partial Summary Judgment, and Defendants' Motion to Dismiss.  The Court has addressed Defendants' request to stay proceedings and Motion to Dismiss in a separate order.  In that order, the Court denied Defendants' Motion to Dismiss Count V and granted the Defendants' request to stay proceedings as modified.  In light of

this stay, the instant order will go into effect after the stay
is dissolved.

Plaintiffs seek summary judgment on Count V, in which
Plaintiffs allege that as a result of Defendants' conduct, they
have been deprived of income that constitutes wages, which is
actionable under H.R.S. §§ 388-6, 388-10, and 388-11.

## STANDARD

The purpose of summary judgment is to identify and
dispose of factually unsupported claims and defenses. See
Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Summary
judgment is therefore appropriate if "the movant shows that there
is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).
"A party asserting that a fact cannot be or is genuinely disputed
must support the assertion," and can do so in either of two ways:
by "citing to particular parts of materials in the record,
including depositions, documents, electronically stored
information, affidavits or declarations, stipulations (including
those made for purposes of the motion only), admissions,
interrogatory answers, or other materials"; or by "showing that
the materials cited do not establish the absence or presence of a
genuine dispute, or that an adverse party cannot produce
admissible evidence to support the fact."  Fed. R. Civ. P.
56(c)(1).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case.  A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).[9/]  Conversely, where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323; Miller v. Glenn Miller Prods., 454 F.3d 975, 987 (9th Cir. 2006).  The moving party may do so with affirmative evidence or by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.[10/]  Once the

_____

    [9/]Disputes as to immaterial facts do "not preclude summary judgment."  Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986).

    [10/]When the moving party would bear the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial.  See Miller, 454

moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment.  See Celotex, 477 U.S. at 324; Matsushita Elec., 475 U.S. at 586; Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).[11/] The nonmoving party must instead set forth "significant probative evidence" in support of its position.  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l, 391 U.S. at 290).  Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial.

---

F.3d at 987 (quoting C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000)).  When the nonmoving party would bear the burden of proof at trial, the party moving for summary judgment may satisfy its burden with respect to the motion for summary judgment by pointing out to the court an absence of evidence from the nonmoving party. See id. (citing Celotex, 477 U.S. at 325).

[11/]Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); see also T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987); Johnson v. Wash. Metro. Area Transit Auth., 883 F.2d 125, 128 (D.C. Cir. 1989) ("The removal of a factual question from the jury is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury."), cited in Villiarimo, 281 F.3d at 1061.

See <u>Celotex</u>, 477 U.S. at 322.

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. See <u>T.W. Elec. Serv.</u>, 809 F.2d at 630-31.[12/]  Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied.   <u>Anderson</u>, 477 U.S. at 250-51.

## DISCUSSION

In Count V, Plaintiffs assert that as a result of Defendants' unlawful failure to remit the entire proceeds of food and beverage service charges to the food and beverage servers, Defendants are liable to Plaintiffs under Chapter 388.   Second Am. Compl. Count V.   In its order denying Defendants' Motion to Dismiss Count V, the Court held that Count V states a plausible claim, <u>i.e.</u>, an employee may recover under H.R.S. §§ 388-6, 388-10, and 388-11, for the failure of a hotel to distribute service charges to employees when the hotel did not disclose that the service charges were being used to pay for costs or expenses other than wages and tips of employees, as required by H.R.S. § 481B-14.

## I.   <u>Statutory Requirements</u>

---

[12/]At the summary judgment stage, the court may not make credibility assessments or weigh conflicting evidence.   <u>See Anderson</u>, 477 U.S. at 249; <u>Bator v. Hawaii</u>, 39 F.3d 1021, 1026 (9th Cir. 1994).

H.R.S. § 481B-14 require that:

> Any Hotel or restaurant that applies a
> service charge for the sale of food or
> beverage services shall distribute the
> service charge directly to its employees as
> tip income or clearly disclose to the
> purchaser of the services that the service
> charge is being used to pay for costs or
> expenses other than wages and tips of
> employees.

H.R.S. § 388-6 states that:  "No employer may deduct, retain, or otherwise require to be paid, any part or portion of any compensation earned by any employee except where required by federal or state statute or by court process or when such deductions or retentions are authorized in writing by the employee."[13]  Section 388-11 provides an employee or class of employees with a cause of action to recover unpaid wages. Pursuant to § 388-10(a), an employer who fails to pay wages in violation of any provision of Chapter 388 without equitable

---

[13]Defendants asserted in their reply supporting their Motion to Dismiss that because Plaintiffs' union agreed that the Hotel could keep seven percent of the banquet service charges, there is an authorization in writing that prevents Plaintiffs' recovery. Defs.' Reply at 6 n.1.  Defendants do not clearly raise this argument in their Opposition, but do state that the CBA provides that bargaining unit employees "shall receive 93% of the guaranteed service charge less employment taxes."  Defs.' Opp'n at 4.  This Court has already determined that "if under state law a waiver of rights is permissible, 'the CBA must include clear and unmistakable language waiving the covered employee's state right for a court to even consider whether it could be given effect.'"  2010 WL 5146521, at *14 (Doc. No. 118) (quoting Valles v. Ivy Hill Corp., 410 F.3d 1071, 1076 (9th Cir. 2005)).  The language from the CBA is not a clear and unmistakable waiver of Plaintiffs' state law right to receive all earned compensation as set forth in § 388-6.

justification is liable to the employee for double damages. Plaintiffs assert that Defendants withheld compensation they earned in violation of § 388-6 by failing to distribute the full amount of service charges that Defendants imposed without making the disclosure required by § 481B-14.

For Plaintiffs to succeed on their claim that Defendants are liable for unpaid wages under Chapter 388 based on a violation of § 481B-14, Plaintiffs must present sufficient evidence to establish that Defendants: "(1) employed Plaintiffs as food and beverage servers; (2) retained portions of food and beverage service charges while employing Plaintiffs; and (3) failed to clearly disclose to customers that the service charges would not be remitted in full to Plaintiffs." Davis I, 2011 WL 3841075, at *11; see H.R.S. §§ 388-1, 388-6, 388-10, 388-11, and 481B-14.  The employer bears the burden to establish an equitable justification for retaining a portion of food and beverage service charges.  See Arimizu v. Fin. Sec. Ins. Co., 679 P.2d 627, 631-32 (Haw. App. 1984).  Plaintiffs have agreed that any liability with respect to Hilton and Waldorf=Astoria would begin on January 31, 2006, the date they began operating the Hotel. See Pls.' MSJ Mem. at 5 n.3.

## II.  **Application**

### A.  **Equitable Justification**

At the hearing, Defendants asserted that the CBA

13

provided Defendants with an equitable justification for retaining a portion of the service charges.  Defendants assert that to comply with § 481B-14, it would have had to violate the CBA, which would in turn violate federal labor law.  Defs.' Opp'n at 4.  The CBA provides that bargaining unit employees "shall receive 93% of the guaranteed service charge less employment taxes."  Defs.' Response to Pls.' CSF Ex. A, Letter of Understanding, at § 6.  Defendants' premise is erroneous; it could have complied with both the CBA and § 481B-14 by paying employees 93% of the service charge and making the requisite disclosure.  Thus, Defendants have not meet their burden to establish equitable justification for violating § 388-6.

> **B.   Employment**

In their CSF, Plaintiffs assert that "[f]rom January 31, 2006, to the present, Defendants have employed the Plaintiffs, who provide food and beverage services to the hotel's customers."  Pls.' CSF ¶ 3.  Defendants dispute this statement in part, asserting that "'Plaintiffs' may include employees who no longer are employed by Hilton."  Defs.' Response to Pls.' CSF ¶ 3.  Pursuant to Local Rule 56.1(g), "material facts set forth in the moving party's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party."  Thus, the fact Defendants employed Plaintiffs as food and beverage servers at some time since 2006 is deemed admitted.  The relevant dates each plaintiff was employed will go

14

to damages, not liability, and thus Plaintiffs have sufficiently established the first element of their claim.

### C.   Distribution of Service Charges

Defendants assert that they pay 93% of the banquet service charges to their employees pursuant to the CBA, but have not disputed that they do not pay the entire service charges to employees.  See Pls.' CSF ¶ 5; Defs.' Response to Pls.' CSF ¶ 5; Defs.' Opp'n at 4-5.  Thus, Plaintiffs have also established the second element of their claim.

### D.   Clear Disclosure

With respect to the third element, Plaintiffs assert that "Defendants' own documents confirm that they regularly retained a portion of the service charges added to customers' food and beverage bills without disclosing this policy to customers."  Pls.' MSJ Mem. at 3.  Defendants aver that they do make the requisite disclosures in some instances.  Defs.' Opp'n at 4-5; Defs.' Response to Pls.' CSF ¶¶ 6, 11.  Specifically, Defendants assert that Hilton's banquet sales contracts, convention contracts, and 2010 banquet event orders contain the required disclosure.  Defs.' Opp'n at 4; Defs.' Response to Pls.' CSF ¶¶ 6, 11; see Defs.' Response to Pls.' CSF Exs. C-D, G.  Plaintiffs reply that Defendants' purported disclosures do not preclude summary judgment because the "disclosures are not clear in any sense of the word."  Pls.' Reply at 1.  Plaintiffs contend that the disclosures are buried in "multi-page boilerplate

15

agreements that are drafted long before the cost of the event is determined."  Id.

"Clarity and conspicuousness is a question of law." See Rubio v. Capital One Bank, 613 F.3d 1195, 1200 (9th Cir. 2010) (considering as a matter of law whether, under the Truth in Lending Act, a disclosure of annual percentage rates in a credit card solicitation was clear and conspicuous); Barrer v. Chase Bank USA, N.A., 566 F.3d 883, 892 (9th Cir. 2009) ("'[w]e decide conspicuousness as a matter of law'") (quoting In re Basset, 285 F.3d 882, 885 (9th Cir. 2002)); Wallis v. Princess Cruises, Inc., 306 F.3d 827, 835 (9th Cir. 2002) (determining that whether a passenger ticket provided reasonable notice of contractual terms contained in fine print on the ticket is a question of law).

If an employer retains a portion of a service charge, § 481B-14 requires the employer to "clearly disclose to the purchaser of the services that the service charge is being used to pay for costs or expenses other than wages and tips of employees."  The provision does not provide any further guidance on what constitutes a "clear disclosure."

Because the different events involving food or beverage services contain different documents, the Court will discuss banquet events, conventions, room service, and weddings separately.

### 1.   Banquet Events

16

In provision 7 of 18 provisions, of the 2006 and 2007 banquet contracts, Hilton states "[a] 21% service charge will be assessed to all of your bills from the Resort to offset administrative expenses for supervisory, sales and other banquet personnel." Defs.' Response to Pls.' CSF Exs. C, at 2, and D at 2. Defendants contend that this disclaimer appears on the banquet contracts from 2006 until the present. Defs.' Opp'n at 5.

Plaintiffs do not object to the language of the disclosure; instead, Plaintiffs argue that the disclosure is not clear because it is "buried" in a boilerplate agreement and does not appear on other documents given to a purchaser of banquet event services. Plaintiffs assert that the cost of the event is determined when a customer reviews menus to select the items to be served and an event order is generated based on those selections, and that neither the menu nor the event order contains a disclosure.[14/] Pls.' Reply at 2. Plaintiffs allege

_____

[14/]The Court notes that Defendants also contend that the 2010 banquet event orders contain the requisite disclosure. Defendants submitted a 2010 banquet event order, dated June 2, 2010, that states: "All Food and Beverage is subject a 22% Service Charge and a 4.166% Hawaii State and Local Tax. This service charge is not a gratuity and is the property of the hotel to cover discretionary costs of the Event. Your contract contains the terms and agreements governing your function and sets forth your obligations to the Grand Wailea Resort Hotel & Spa for banquet food and beverage revenue." Defs.' Response to Pls.' CSF Ex. G. It is unnecessary to consider this disclosure because the Court concludes Defendants' disclosure in the banquet contracts is adequate, but the Court nonetheless notes this

17

that after the event, the customer is presented with a check identifying the actual cost of the event and the amount assessed for service charges, and no disclosure is made on the checks regarding how the service charge is distributed.  Id.

The Court disagrees that a disclosure must be made in other banquet event documents in addition to contracts, such as the menu, event order form, and check.  Through the disclosure in the contract, a purchaser knows ahead of time that a service charge will be imposed and that it is not distributed in its entirety to serving employees as tips or wages.  The purchaser is not misled and can plan accordingly to leave a tip or gratuity, in addition to paying the service charge.

The Court also rejects Plaintiffs' argument regarding the location of the disclosure in the contract.  The disclosure appears as a separate provision on one page of the five page event contract.  The provision is the same font size as the other provisions and is not in any way disguised, such as on the back of the contracts or buried in a footnote.  This is sufficient to comply with § 481B-14.

Accordingly, Plaintiffs have failed to establish Defendants' liability with respect to service charges imposed on food and beverage purchases for banquet events.

**2.   Conventions**

---

disclosure is sufficient to satisfy Defendants' obligations.

18

Hilton's 2008 convention contract, which is used for a group that books rooms and food and beverage services, contains the following disclaimer: "SERVICE CHARGE: 21% of the food and beverage total, plus any applicable state or local tax, will be added to your account as a service charge.  This service charge is not a gratuity and is thus property of the hotel to cover discretionary costs of the Event.  Id. at 5-6; Defs.' Response to Pls.' CSF Ex. E, at 8.  This statement appears under the heading "Banquet Services" and is on page 8 of the 16 page contract.  See Defs.' Response to Pls.' CSF Ex. E.  A 2010 contract for a meeting in which rooms and food were booked contains the same disclaimer on page 1 of 3.  Id. Ex. F.  Defendants contend this disclosure appears in the contracts from 2006 forward.  Defs.' Opp'n at 5.  Plaintiffs' do not object to the language of the disclosure, but again assert that the disclosure is buried in a "boilerplate agreement" and does not appear on other documents given to a customer in connection with conventions.

As with the banquet contracts, it is unnecessary the disclosure appear on every document given to a purchaser in connection with convention events.  The visibility of the disclosure is adequate.  The disclosure appears as a separate provision, and is the same font size as the other provisions.

Plaintiffs have therefore failed to establish Defendants' liability for service charges imposed on food and

beverage purchases at conventions.

### 3.    Room Service

Defendants do not dispute that they have not provided the requisite disclosures to customers on room service menus and room service checks.  <u>Compare</u> Pls.' CSF ¶¶ 6, 9-10, <u>with</u> Defs.' Response to Pls.' CSF ¶¶ 6, 9-10.  Plaintiffs have submitted sample room service checks ranging from November 2008 until March 2011.  The room service checks impose a service charge and contain no disclosure regarding the distribution of the service charge.  Pls.' CSF Ex. 5.  In fact, the checks state "Gratuity Included!"  <u>Id.</u>  Thus, Plaintiffs have sufficiently established Defendants' liability with respect to service charges imposed on food and beverages purchased via room service.

### 4.    Weddings

Plaintiffs attached banquet checks from weddings to their CSF, but did not make any allegations regarding wedding events in the CSF.  Plaintiffs submitted wedding contracts from March 2007 and February 2009, with their Reply.  Pls.' Reply Ex. 4.  The contracts stated that a service charge would be assessed on food and beverage purchases, but did not contain a disclosure regarding its distribution.  <u>Id.</u>  From the hearing, it appears the wedding contracts did not originally contain the requisite disclosure, but that Defendants added a disclosure at some point. Defendants assert that they did not submit any documents to rebut

20

their liability for service charges imposed on food and beverage purchases at wedding events because Plaintiffs did not make allegations regarding weddings in their CSF.

Without allegations concerning wedding events in their CSF, Plaintiffs have failed to establish Defendants' liability for such events.  <u>See</u> L.R. 56.1(a) ("A motion for summary judgment shall be accompanied by a supporting memorandum and a separate concise statement detailing <u>each material fact</u> as to which the moving party contends that there are no genuine issues to be tried that are essential for the court's determination of the summary judgment motion.")

<u>CONCLUSION</u>

For the foregoing reasons the Court GRANTS IN PART and DENIES IN PART Plaintiffs' Motion for Partial Summary Judgment.

Specifically, the Court grants summary judgment only for Defendants' liability with respect to service charges imposed on food and beverages purchased via room service.

The Court has ordered a stay of all proceedings pending a decision by the Hawaii Supreme Court on the question of law certified to it by Judge Kobayashi in <u>Villon v. Marriot Hotel Services, Inc.</u>, CV-08-00529 LEK-RLP, Doc. No. 130 (Oct. 12, 2011), and <u>Rodriguez v. Starwood Hotels & Resorts Worldwide, Inc.</u>, CV-09-00016 LEK-RLP, Doc. No. 139 (Oct. 12, 2011).  The closing is administrative only and thus has no effect on the

procedural or substantive rights of any party or any limitations period.  Any party may move to reopen the case after the Hawaii Supreme Court rules, and the parties shall promptly inform this court in writing of the disposition in Judge Kobayashi's case, at which time the stay will be automatically dissolved if not earlier.  The instant order will go into effect after the stay is dissolved.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 2, 2011.




_____
Alan C. Kay
Sr. United States District Judge


Wadsworth v. KSL Grand Wailea Resort, Inc., Civ. No. 08-00527 ACK-RLP: Order Granting in Part and Denying in Part Plaintiffs' Motion for Partial Summary Judgment.