IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NAN WADSWORTH, MARK APANA, ELIZABETH VALDEZ KYNE, BERT VILLON, and STEPHEN WEST, on behalf of themselves and all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>KSL GRAND WAILEA RESORT, INC.; CNL RESORT LODGING TENANT CORP.; CNL GRAND WAILEA RESORT, LP; MSR RESORT LODGING TENANT, LLC; HILTON HOTELS CORPORATION; WALDORF-ASTORIA MANAGEMENT LLC; and BRE/WAILEA LLC; dba GRAND WAILEA RESORT HOTEL & SPA,<br><br>　　　　Defendants. | ) Civ. No. 08-00527 ACK-RLP<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' RENEWED MOTION FOR SUMMARY JUDGMENT, DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT**

For the following reasons, the Court hereby GRANTS IN PART AND DENIES IN PART the motions as follows:

The Court GRANTS Defendants' Motion for Partial Summary Judgment as to Counts II, III, and IV of the Second Amended Complaint.

The Court GRANTS Plaintiffs' Renewed Motion for Summary Judgment and DENIES Defendants' Motion for Partial Summary Judgment and Counter-Motion for Summary Judgment and concludes

that Plaintiffs have established Defendants' liability as to
Count V for (1) long-form conventions from January 31, 2006 to
May of 2007; (2) short-form conventions from January 31, 2006
until December 31, 2008; (3) weddings from January 31, 2006 to
January 2009; and (4) in-room dining from January 31, 2006 to
January 2012. The Court GRANTS Defendants' Motion for Partial
Summary Judgment and Counter-Motion for Summary Judgment and
DENIES Plaintiffs' Motion for Summary Judgment as to the portion
of Count V premised upon banquets.

Finally, the Court DENIES Defendants' Counter-Motion as
to equitable justification.

## FACTUAL BACKGROUND

Plaintiffs Nan Wadsworth, Elizabeth Valdez Kyne, Bert
Villon, and Stephen West ("Plaintiffs") brought suit on behalf
of a similarly situated class against a number of different
entities that have owned and operated the Grand Wailea Resort
Hotel & Spa ("Grand Wailea Resort" or "Hotel") in Maui during the
applicable statute of limitations period. (Second Am. Compl.
¶¶ 4-6.) Defendants include MSR Resort Lodging Tenant, LLC, KSL
Grand Wailea Resort, Inc., Hilton Hotels Corp. ("Hilton"),
Waldorf-Astoria Management LLC ("Waldorf-Astoria"), CNL Grand
Wailea Resort, LP, and CNL Lodging Tenant Corp.[1] (Id. ¶¶ 6-8.)

---

[1] Plaintiffs also brought suit against Grand Wailea
Resort's operator at the time the Second Amended Complaint was
(continued...)

Plaintiffs have all worked as food and beverage servers for Defendants. (<u>Id.</u> ¶ 3.)

Plaintiffs' Second Amended Complaint alleges that the Grand Wailea Resort provides food and beverage services throughout the Hotel, including in its banquet department, its restaurants, and through room service. (<u>Id.</u> ¶ 5.) Plaintiffs allege that Defendants have added a preset service charge to customers' bills for food and beverage served at the Hotel, but that Defendants have not remitted the total proceeds of the service charge as tip income to the employees who serve the food and beverages. (<u>Id.</u> ¶¶ 9-10.) Instead, Plaintiffs allege that the Defendants have had a policy and practice of retaining for themselves a portion of these service charges (or using it to pay managers or other non-tipped employees who do not serve food and beverages), without disclosing to the Hotel's customers that the service charges are not remitted in full to the employees who serve the food and beverages. (<u>Id.</u> ¶¶ 11-12.)

Plaintiffs' Second Amended Complaint asserts five counts. As a result of the Court's ruling on a previous motion to dismiss, the following counts remain: Count II, in which Plaintiffs allege that Defendants' conduct constitutes unlawful

---

[1]/(...continued)
filed, BRE/Wailea, LLC ("BRE/Wailea"). (Second Am. Compl. ¶ 6.) The parties subsequently stipulated to the dismissal of all claims against BRE/Wailea, which this Court approved and ordered on April 28, 2009. (Doc. No. 67.)

intentional interference with contractual and/or advantageous
relations; Count III, in which Plaintiffs allege that Defendants'
conduct constitutes a breach of an implied contract between
Defendants and Defendants' customers, of which Plaintiffs are
third party beneficiaries[2]; Count IV, in which Plaintiffs allege
that Defendants have been unjustly enriched at Plaintiffs'
expense under state common law; and Count V, in which Plaintiffs
allege that as a result of Defendants' conduct, they have been
deprived of income that constitutes wages, which is actionable
under Haw. Rev. Stat. §§ 388-6, 388-10, and 388-11.

## PROCEDURAL BACKGROUND

On November 24, 2008, Plaintiffs filed a Class Action
Complaint. (Doc. No. 1.) On January 29, 2009, Plaintiffs filed an
Amended Class Action Complaint.[3] (Doc. No. 19.) On July 9, 2009,
the Court stayed this case in light of Judge Gillmor's
certification to the Hawaii Supreme Court of a question of law

---

[2] In Count III, Plaintiffs also asserted that Defendants
breached an implied contract between Plaintiffs and Defendants.
In a prior ruling, the Court dismissed this portion of Count III
as preempted under federal labor law. See 2010 WL 5146521 (Doc.
No. 118).

[3] There were a number of similar cases filed in this
district court, and on January 23, 2009, Plaintiffs moved to
consolidate or alternatively for assignment of all the related
cases to one judge pursuant to Local Rule 40.2. (Doc. No. 16.) On
April 8, 2009, this Court adopted the Magistrate Judge's Findings
and Recommendation that the similar cases not be consolidated.
2009 WL 975769 (Doc. No. 56).

that was also important to the instant case.[4/] (See Doc. No. 71.)

The Hawaii Supreme Court answered the certified question on March

29, 2010. See Davis v. Four Seasons Hotel Ltd., 228 P.3d 303

(Haw. 2010). Accordingly, on April 19, 2010, Plaintiffs filed a

motion to lift the stay and a motion to file a second amended

complaint. (Doc. Nos. 73 & 74.) The Magistrate Judge granted both

motions on June 22, 2010. (Doc. No. 89.) Plaintiffs filed their

Second Amended Complaint on June 28, 2010. (Doc. No. 93.)

On July 20, 2010, Defendants filed a Motion to Dismiss

Second Amended Complaint. (Doc. No. 95.) On December 10, 2010,

the Court granted the motion with respect to Count I, Plaintiffs'

unfair methods of competition claim, without prejudice, and Count

III, in so far as it alleged a breach of an implied contract

between Plaintiffs and Defendants. 2010 WL 5146521 (Doc. No.

118).

On March 25, 2011, Plaintiffs filed a Motion to Certify

_____

[4/] Judge Gillmor certified the following question:

> Where plaintiff banquet server employees allege
> that their employer violated the notice provision
> of H.R.S. § 481B-14 by not clearly disclosing to
> purchasers that a portion of a service charge was
> used to pay expenses other than wages and tips of
> employees, and where the plaintiff banquet server
> employees do not plead the existence of
> competition or an effect thereon, do the plaintiff
> banquet server employees have standing under
> H.R.S. § 480-2(e) to bring a claim for damages
> against their employer?

Class.[5/] (Doc. No. 126.) On June 27, 2011, Magistrate Judge

Puglisi issued his Findings and Recommendations to Grant in Part

and Deny in Part Plaintiff's Motion for Class Certification.

(Doc. No. 149.) Neither party objected to the Magistrate Judge's

Findings and Recommendation, and on July 18, 2011, the Court

adopted it, certifying the class as "all non-managerial food and

beverage employees who, from January 31, 2006 to the present,

have worked at banquets, functions, other events, and small

parties, where a service charge was imposed and where a part of

that service charge was kept by the Defendants or management

without adequate disclosure to customers" as to the non-debtor

Defendants Hilton and Waldorf-Astoria (together "Defendants").[6/]

(Doc. Nos. 149 & 150.)

On June 1, 2011, Plaintiffs filed a Motion for Partial

---

[5/] On April 1, 2011, Defendants filed a Suggestion of
Bankruptcy for MSR Golf Course LLC, et al., which acted to stay
proceedings against all Defendants except Hilton and Waldorf-
Astoria. (Doc. No. 128.) Defendants CNL Grand Wailea Resort, LP,
CNL Resort Lodging Tenant Corp., and KSL Grand Wailea Resort,
Inc. are each a subsidiary or affiliate of MSR Resort Golf Course
LLC. (See Doc. No. 128.) On October 23, 2014, the parties
stipulated to the dismissal of the debtor parties. (Doc. No.
234.)

[6/] Plaintiffs requested that the class be defined as "all
non-managerial food and beverage service employees who, since
November 24, 2002 have worked at banquets, functions, other
events, and small parties, where a service charge was imposed and
where a part of that service charge was kept by the Defendants or
management without adequate disclosure to customers." (Doc. No.
126.) Hilton and Waldorf-Astoria, however, did not manage the
Hotel prior to January 31, 2006. (See Doc. No. 149.)

Summary Judgment ("Plaintiffs' Motion for Summary Judgment")
(Doc. No. 143,) and Defendants filed a Motion to Dismiss Count V
of the Second Amended Class Action Complaint or to Certify the
Question to the Hawaii Supreme Court (Doc. No. 146.) On December
2, 2011, the Court issued its Order Granting in Part and Denying
in Part Plaintiffs' Motion for Partial Summary Judgment, in which
the Court granted summary judgment as to Defendants' liability
with respect to service charges imposed on food and beverages
purchased via room service. See 2011 WL 6030074 ("12/2/11
Order"). Defendants did not seek reconsideration or file an
appeal of the 12/2/11 Order.

Also on December 2, 2011, the Court issued its Order
Denying Defendants' Motion to Dismiss Count V, Granting
Defendants' Request to Stay Proceedings as Modified, and
Administratively Closing this Case, in which the Court, *inter
alia*, stayed all proceedings in the instant case pending a
decision by the Hawaii Supreme Court on a question of law
certified to it by Judge Kobayashi.[7]

On August 1, 2013, Plaintiffs notified the Court of the

---

[7] As was relevant in this case, Judge Kobayashi certified
the following question: "May food or beverage service employees
of a hotel or restaurant bring a claim against their employer
based on alleged violation of Haw. Rev. Stat. § 481B-14 by
invoking Haw. Rev. Stat. §§ 388-6, 388-10, and 388-11 and without
invoking Haw. Rev. Stat. §§ 480-2 or 480-13?" Villon v. Marriot
Hotel Services, Inc., CV-08-00529 LEK-RLP, Doc. No. 130 (Oct. 12,
2011) (Doc. No. 130).

Hawaii Supreme Court's decision and, pursuant to Plaintiffs'
request, the Court lifted the stay and reopened the case. (Doc.
Nos. 168, 169.) On July 2, 2014, Defendants filed a Motion to
Vacate Order on Motion for Partial Summary Judgment. (Doc. No.
193.) On the same day, Defendants filed a Motion to Decertify the
Class. (Doc. No. 192.) On September 26, 2014, the Court denied
both of Defendants' motions.[8/] (Doc. Nos. 218 & 219).

On July 28, 2014, Plaintiffs filed their Renewed Motion
for Summary Judgment, along with a concise statement of facts and
a number of exhibits. (Doc. Nos. 199 & 200.) On the same day,
Defendants filed their Motion for Partial Summary Judgment, also
supported by a concise statement of facts and numerous exhibits.
(Doc. Nos. 201 & 202.) On October 10, 2014, Defendants filed
their Counter-Motion for Summary Judgment, along with their

_____

[8/] In its Order Denying Defendants' Motion to Vacate,
pursuant to Federal Rule of Civil Procedure 60(a), the Court
elected to remedy any confusion over the class definition by
amending it to clarify that, pursuant to the Court's original
intention and the parties' understanding at the time, the
definition includes in-room dining. The class definitely
therefore reads: "all non-managerial food and beverage employees
who, from January 31, 2006 to the present, have worked at
banquets, functions, other events, in-room dining, and small
parties, where a service charge was imposed and where a part of
that service charge was kept by the Defendants or management
without adequate disclosure to customers." (Doc. No. 218 at 19.)
Thus, to the extent Defendants argue in their Motion that in-room
dining servers are not members of the class, their arguments are
without merit.

8

responses to Plaintiffs' concise statement of facts.[9/] (Doc. Nos 223 & 225.) On the same day, Plaintiffs filed their memorandum in opposition to Defendants' Motion for Partial Summary Judgment, as well as their responses of Defendants' concise statement of facts. (Doc. Nos. 228 & 229.) The parties filed their respective replies on October 20, 2014. (Doc. Nos. 231 & 232.) The hearing on the motions was held on November 3, 2014.[10/]

### STANDARD OF REVIEW

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251–52 (1986).

---

[9/] Plaintiffs object to Defendants' Counter-Motion, arguing that it is an attempt to "exploit" Local Rule 7.9 and file an untimely dispositive motion. Plaintiffs correctly point out that Defendants were fully aware of the arguments in their Counter-Motion when they filed their original Motion for Partial Summary Judgment; indeed, there is some overlap between the two. The Court will nevertheless consider Defendants' Counter-Motion, but cautions Defendants that further circumvention of Court-issued deadlines will not be tolerated.

[10/] On November 6, 2014, pursuant to the Court's directive at the hearing, the parties each filed their respective lists summarizing the contested and uncontested service charge disclosures in the instant suit. (Doc. Nos. 237 &238.)

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. Id. at 587.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . . or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 585. "[T]he requirement is that there be no genuine issue of material fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 247-48 (emphasis in original). Also, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. Triton Energy Corp. v. Square D Co., 68 F.3d

1216, 1221 (9th Cir. 1995). Likewise, the nonmoving party "cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003).

## DISCUSSION

In their Motion, Plaintiffs seek summary judgment as to Defendants' liability as to Count V of the Second Amended Complaint. Defendants, in their Motion and Counter-Motion, seek summary judgment as to all claims. The Court addresses each in turn.

## I.    Count V

In Count V, Plaintiffs assert that, as a result of Defendants' failure to remit the entire proceeds of food and beverage service charges to the food and beverage servers without adequate disclosure in violation of Haw. Rev. Stat. § 481B-14, Defendants are liable to Plaintiffs under Chapter 388 of the Hawaii Revised Statutes. (Second Am. Compl. Count V.) Section 481B-14 requires that:

> Any Hotel or restaurant that applies a service
> charge for the sale of food or beverage services
> shall distribute the service charge directly to
> its employees as tip income or clearly disclose to
> the purchaser of the services that the service
> charge is being used to pay for costs or expenses
> other than wages and tips of employees.

Haw. Rev. Stat. § 388-6 states that: "No employer may deduct, retain, or otherwise require to be paid, any part or

11

portion of any compensation earned by any employee except where required by federal or state statute or by court process or when such deductions or retentions are authorized in writing by the employee."[11/] Section 388-11 provides an employee or class of employees with a cause of action to recover unpaid wages. Pursuant to § 388-10(a), an employer who fails to pay wages in violation of any provision of Chapter 388 without equitable justification is liable to the employee for double damages. Plaintiffs assert that Defendants withheld compensation they earned in violation of § 388-6 by failing to distribute the full amount of service charges that Defendants imposed without making the disclosure required by § 481B-14.[12/]

For Plaintiffs to succeed on their claim, they must present sufficient evidence to establish that Defendants: "(1)

---

[11/] Plaintiffs' union agreed in a collective bargaining agreement ("CBA") that the Hotel could keep seven percent of the banquet service charges; however, this Court has already determined that "if under state law a waiver of rights is permissible, 'the CBA must include clear and unmistakable language waiving the covered employee's state right for a court to even consider whether it could be given effect.'" 2010 WL 5146521, at *14 (Doc. No. 118) (quoting Valles v. Ivy Hill Corp., 410 F.3d 1071, 1076 (9th Cir. 2005)). The Court concluded that the language from the CBA is not a clear and unmistakable waiver of Plaintiffs' state law right to receive all earned compensation (unless properly disclosed) as set forth in § 388-6. Id.; see also 12/2/11 Order at 12 n.13.

[12/] The Hawaii Supreme Court has ruled that employees may recover for violations of Haw. Rev. Stat. § 481B-14 through Haw. Rev. Stat. § 388-6. See Villon v. Marriott Hotel Svcs., Inc., 306 P.3d 175, 188 (Haw. 2013).

employed Plaintiffs as food and beverage servers; (2) retained portions of food and beverage service charges while employing Plaintiffs; and (3) failed to clearly disclose to customers that the service charges would not be remitted in full to Plaintiffs." Davis v. Four Seasons Hotel Ltd., 810 F. Supp. 2d 1145, 1157 (D. Haw. 2011). The employer bears the burden of establishing an equitable justification for retaining a portion of food and beverage service charges. See Arimizu v. Fin. Sec. Ins. Co., 5 Haw. App. 106, 679 P.2d 627, 631–32 (Haw. App. 1984).

In its December 2, 2011 Order Granting in Part and Denying in Part Plaintiffs' Motion for Partial Summary Judgment ("12/2/11 Order"), the Court found that Plaintiffs have established the first two elements of their claim. (12/2/11 Order at 14-15.) Thus, in the instant motions, the dispute turns on whether Defendants clearly disclosed to customers the portion of service charges (if any) that would be remitted to Plaintiffs.

"Clarity and conspicuousness is a question of law." See Rubio v. Capital One Bank, 613 F.3d 1195, 1200 (9th Cir. 2010) (considering as a matter of law whether, under the Truth in Lending Act, a disclosure of annual percentage rates in a credit card solicitation was clear and conspicuous); Barrer v. Chase Bank USA, N.A., 566 F.3d 883, 892 (9th Cir. 2009) ("'[w]e decide conspicuousness as a matter of law'") (quoting In re Basset, 285 F.3d 882, 885 (9th Cir. 2002)); Wallis v. Princess Cruises, Inc.,

13

306 F.3d 827, 835 (9th Cir. 2002) (determining that whether a passenger ticket provided reasonable notice of contractual terms contained in fine print on the ticket is a question of law). If an employer retains a portion of a service charge, § 481B-14 requires the employer to "clearly disclose to the purchaser of the services that the service charge is being used to pay for costs or expenses other than wages and tips of employees." The provision itself does not provide any further guidance on what constitutes a "clear disclosure."

At the hearing on the instant motions, both parties agreed that the purpose of the statute is to ensure that food and beverage customers have clear notice regarding whether servers will receive the full service charge so that they may make an informed decision regarding whether and how much to tip. In general, the Court finds that customers were given sufficient information to make an informed decision (and Defendants therefore satisfied the requirements of § 481B-14) when service charge disclosures stated that (1) the service charge was not a gratuity, (2) the service charge was to be applied entirely to administrative expenses, or (3) a certain amount or percentage of the service charge would be paid to the food and beverage servers.

Because the different events involving food or beverage services contain different documents, the Court will discuss

banquet events, conventions, room service, and weddings separately.

## A. Banquets

From the beginning of the class period (January 31, 2006) until March 2010, banquet contracts contained the following service charge disclosure:

> A 21% service charge will be assessed to all of your bills from the Resort to offset administrative expenses for supervisory, sales, and other banquet personnel. On any event where the guaranteed number is less than 25 persons, additional surcharges will be added to the event.

(Def.'s CSF, Dowse Decl., Ex. C; Pl.'s CSF ¶ 31.) Beginning in March of 2010, Defendants switched from using banquet contracts to using catering sales event agreements, which included the following disclosure:

> This service charge is not a gratuity and is the property of the Hotel to cover discretionary costs of the Event. A portion of the service charge is being used to pay for costs or expenses other than wages and tips of employees.[13]

---

[13] In May 2013, disclosure was revised to read in relevant part: "A portion of the service charge (currently 18.25% for limited & cocktail meal service or 17.00% for full meal service) will be fully distributed to waiters, waitresses, bus help and/or bartenders engaged in the Event. The remaining portion of the service charge (currently 5.75% for limited & cocktail meal service or 5.00% for full meal service) is being used to pay for costs and expenses other than wages and tips of employees and will be applied to Hotel administration costs." (Def.'s CSF, Dowse Decl., Ex. F.) There appears to be no dispute that this disclosure is sufficient for purposes of § 481B-14, and the Court agrees that it gives the customer sufficient information to make an informed determination as to whether and how much to tip.

(Def.'s CSF, Do; Pl.'s CSF ¶ 32.) Plaintiffs apparently concede that the 2010 language is sufficient, and the Court concurs. (Pl.'s Mot. at 20.) Therefore, the only dispute as to the banquet contracts goes to the sufficiency of the disclosure between January 2006 and March 2010.

In its 12/2/11 Order, this Court ruled that the challenged disclosure in the banquet contracts was sufficient to comply with § 481B-14, and that Defendants were not required to include disclosures in other banquet event documents other than the contracts.[14/] (12/2/11 Order at 17-18.) Plaintiffs correctly note, however, that the Court did not rule on the adequacy of the language of the disclosure, only on the adequacy of its location. (Pl.'s Mot. at 4; see also 12/2/11 Order at 17.)

The Court finds that the disclosure contained in the banquet contracts between January 2006 and March 2010 was sufficient to satisfy the requirements of § 481B-14. The

---

[14/] In their Motion here, Plaintiffs apparently seek reconsideration of this Court's ruling that it is unnecessary for service charge disclosures to appear in every document given to the purchaser. (Pl.'s Mot. at 6 n.5; 22-24.) The Court DENIES Plaintiffs' request for reconsideration. Plaintiffs do not meet the requirements of Federal Rule of Civil Procedure 59(e) and Local Rule 60.1 governing motions for reconsideration. Specifically, Plaintiffs have not shown (and do not even argue) that there are new material facts, an intervening change in law, or a need to correct clear error. Rather, Plaintiffs merely repeat the arguments this Court already rejected in its 12/2/11 Order. As Plaintiffs well know, mere disagreement with a previous order is an insufficient basis for reconsideration. See White v. Sabatino, 424 F. Supp. 2d 1271, 1274 (D. Haw. 2006).

disclosure states that the service charge will be used "to offset administrative expenses for supervisory, sales, and other banquet personnel." (Def.'s CSF, Dowse Decl., Ex. C.) "Administrative expenses" are generally understood to be the ordinary operating costs of a business, distinct from payments made to employees in the form of wages or tips. Thus, a disclosure stating that service charges will be used "to offset administrative expenses" clearly indicates that the service charge will be used for purposes other than payment to banquet servers. The Court concludes that a reasonable customer reading this language would be on notice that the service charge was being used to pay for costs and expenses other than the wages and tips of the food and beverage servers. The disclosure is therefore sufficient for purposes of § 481B-14.

Plaintiffs argue that, even if the disclosure in the banquet contracts is found to be sufficient, they are nevertheless entitled to summary judgment as to banquets between January 2006 and the end of 2008 because "Defendants provided their banquet customers with inconsistent, conflicting disclosures during that time." (Pl.'s Mot. at 20.) Specifically, Plaintiffs note that, at the same time Defendants made the disclosures in their banquet contracts that service charges would be assessed "to offset administrative expenses for supervisory, sales, and other banquet personnel," the banquet menus stated

that "all cash prices are inclusive of gratuity and tax." (<u>Id.</u> at 20-21; Pl.'s CSF, Ex. 8 at 78.)

The banquet menus contain the statement "all cash prices are inclusive of gratuity and tax" in the context of their price lists for drinks served via "hosted" and "cash" bar[15/] services. (Pl.'s CSF, Ex. 8 at 78.) These prices refer only to drink prices, and do not appear to relate to or include any applicable service charges. Indeed, at various times the banquet menu states "[t]he above prices are subject to a 21% service charge and a 4.166% sales tax," indicating that the service charge is not included in the listed drink prices. (<u>See, e.g.,</u> <u>id.</u> at 79.) Thus, the statement that the listed drink prices - which do not include the service charge - are "inclusive of gratuity and tax" does not implicate the requirements of § 481B-14, which relates only to service charges. Because the statement in the banquet menus does not relate to service charges, it cannot be accurately characterized as inconsistent or conflicting with Defendants' service charge disclosures in the banquet contracts.

While it is true that the banquet menus at issue do not contain any clear disclosures regarding the distribution of the service charges, this Court has already ruled that Defendants

---

[15/] At the hearing on the instant motions, the parties agreed that no service charge is imposed upon drinks served at cash bars at banquets and other events.

were not required to include disclosures "in other banquet event documents in addition to contracts, such as the menu, event order form, and check." (12/2/11 Order at 18.)[16/] Moreover, as discussed above, the Court finds that the disclosure contained in the banquet contracts was sufficient to satisfy § 481B-14. Defendants are therefore entitled to summary judgment in their favor on Plaintiffs' claims in Count V based on service charges imposed at banquet functions. The Court GRANTS Defendants' Motion and Counter-Motion and DENIES Plaintiffs' Motion as to these claims.

**B.    Conventions**

Depending upon the number of hotel rooms associated with the event, the Hotel used either short-form (100 rooms or fewer) or long-form (100 rooms or more) contracts when booking conventions. (Def.'s CSF ¶ 22.)

First, as to long-form contracts, there appears to be no dispute that no disclosure was made on long-form contracts between January 2006 and May of 2007. (Def.'s CSF ¶ 23; Pl.'s CSF ¶ 8.) As to short-form contracts, it is undisputed that no disclosure regarding the distribution of service charges was made between January 2006 and December 31, 2008. (Def.'s CSF ¶ 25;

---

[16/] The parties also make arguments regarding the banquet event order ("BEO") forms that were used for banquets; however, as the Court stated in its 12/2/11 Order, it is unnecessary to consider the sufficiency of the disclosures in BEOs, because the banquet contracts themselves contained an adequate disclosure. (12/2/11 Order at 17 n.14.)

Pl.'s CSF ¶ 14.) In May of 2007 for long-form contracts, and as
of December 31, 2008 for short-form contracts, Defendants began
including the following disclosure regarding service charges:
"This service charge is not a gratuity and is the property of the
hotel to cover discretionary costs of the Event." (Def.'s CSF,
Dowse Decl., Exs. M, O.)[17/] The parties do not appear to dispute
that this disclosure is sufficient to satisfy the requirements of
§ 481B-14, and the Court concurs. (Def.'s Counter-Mot. at 19-20;
Pl.'s Mot. at 14.) Thus, it appears that Plaintiffs have
demonstrated that no adequate disclosure was made for long-form
contract conventions from January 2006 until May of 2007, and for
short-form contract conventions from January 2006 to December 31,
2008.

　　　　Defendants argue, however, that even for the periods
during which the long- and short-form contracts contained no
service charge disclosures, they still satisfied the requirements

---

[17/] In 2013, both long- and short-form contracts were revised
to include a disclosure that read, in relevant part: "A portion
of the service charge (currently 18.25% for limited & cocktail
meal service or 17.00% for full meal service) will be fully
distributed to waiters, waitresses, bus help and/or bartenders
engaged in the Event. The remaining portion of the service charge
(currently 5.75% for limited & cocktail meal service or 5.00% for
full meal service) is being used to pay for costs and expenses
other than wages and tips of employees and will be applied to
Hotel administration costs." (Def.'s CSF, Dowse Decl., Exs. N &
P.) There appears to be no dispute that this disclosure is
sufficient for purposes of § 481B-14, and the Court agrees that
it gives the customer sufficient information to make an informed
determination as to whether and how much to tip.

of § 481B-14 because the banquet event order ("BEO") forms used

for all food and beverage events (including conventions) did

contain adequate disclosures. (Def.'s Counter-Mot. at 20.) From

the beginning of the class period until May of 2009, the BEOs

contained the following disclosure:

> All food and beverage is subject to a 21% service
> charge and a 4.166% Hawaii State and Local Tax.
> Service charges include gratuities, taxes, and
> other hotel service charges.

(Def.'s CSF, Dowse Decl., Ex. G.) In January 2009, Defendants

began providing a Terms and Conditions sheet with the BEO that

contained the following disclosure:

> 22% of the food and beverage total plus applicable
> state or local tax will be added to your account
> as a service charge. This service charge is not a
> gratuity and is the property of the hotel to cover
> discretionary costs of the Event.[18]

(Def.'s CSF, Dowse Decl., Ex. J.) This Court, in its 12/2/11

Order, found that the latter disclosure was sufficient for

purposes of § 481B-14. (12/2/11 Order at 17 n.14.) Defendants

---

[18] The BEO contract and terms and conditions disclosures
were revised again in 2013 to read, in relevant part, "A portion
of the service charge (currently 16.25% for limited & cocktail
meal service or 17.00% for full meal service) will be fully
distributed to waiters, waitresses, bus help and/or bartenders
engaged in the Event. The remaining portion of the service charge
(currently 5.75% for limited & cocktail meal service or 5.00% for
full meal service) is being used to pay for costs and expenses
other than wages and tips of employees and will be applied to
Hotel administration costs." (Def.'s CSF, Dowse Decl., Exs. I &
L.) There appears to be no dispute that this disclosure is
sufficient for purposes of § 481B-14, and the Court agrees that
it gives the customer sufficient information to make an informed
determination as to whether and how much to tip.

argue that the earlier disclosure is sufficient as well. The Court disagrees.

The service charge disclosure contained in the BEOs prior to January 2009 does not "clearly disclose" that the service charge was being used entirely to pay for costs and expenses other than the wages and tips of food and beverage servers, nor does it "clearly disclose" exactly how much of the service charge will go to servers as a gratuity; thus, it fails to provide customers sufficient information upon which to base their gratuity decision. The Hawaii Supreme Court has acknowledged that the purpose of § 481B-14 was to ensure that employees would not receive a smaller gratuity than the customer intended. Specifically, the Hawaii Supreme Court noted that it is generally understood that service charges applied to the sale of food and beverages by hotels are levied in lieu of a voluntary gratuity; absent sufficient disclosure, customers are misled into believing that the employee will receive the service charge as a gratuity when, in reality, some or all of it is retained by the hotel. See Villon, 306 P.3d at 184-85. The statement that "[s]ervice charges include gratuities" reinforces, rather than dispels, a customer's belief that the service charge is levied in lieu of a gratuity. Rather than informing customers how much of the service charge will be paid out to servers as a gratuity, the statement that the service charge "include[s] gratuities" wrongly

indicates that the entire service charge will be remitted to the servers.

That the disclosure states that the service charge includes "taxes and other service charges" does not negate the misleading nature of the disclosure or otherwise make it sufficiently clear. Defendants argue that the use of the word "other" indicates to the customer that not all of the service charge is a gratuity. As discussed above, however, the purpose of § 481B-14 is to ensure that employees do not receive smaller gratuities because customers believe the gratuity is built into the service charge. See Villon, 306 P.3d 184. The statement that the service charge includes "taxes, and other hotel service charges," when read in conjunction with the statement that "[s]ervice charges include gratuities," simply fails to adequately apprise customers that the service charge is not being imposed in lieu of a gratuity. Thus, the Court concludes that the disclosure contained in the BEO contracts prior to January 2009 was insufficient for purposes of § 481B-14.

Because, as discussed above, no disclosure was made on long-form contracts from January 2006 to May of 2007, and on short-form contracts from January 2006 to December 31, 2008, and because the disclosure in the BEO contract was insufficient during those periods, the Court GRANTS Plaintiffs' Motion and DENIES Defendants' Motion and Counter-Motion as to service

23

charges imposed on conventions using long-form contracts from the beginning of the class period until May of 2007, and on conventions using short-form contracts from the beginning of the class period until December 31, 2008.

## C. Weddings

There is no dispute that, from the beginning of the class period until March of 2010, no disclosures were made on wedding contracts regarding the distribution of service charges imposed for food and beverage service at weddings. (Def.'s CSF ¶ 21; Pl.'s CSF ¶ 21.) In March 2010, the wedding contracts were revised to state that "[t]his service charge is not a gratuity and is the property of the Hotel to cover discretionary costs of the Event." (Def.'s CSF ¶ 22; Pl.'s CSF ¶ 22.) Thus, it appears that wedding contracts lacked the necessary disclosures from the beginning of the class period until March 2010.[19]

Defendants assert, however, that all wedding customers also received either a BEO contract or wedding event order ("WEO") contract (the two being materially identical), and that those contracts contained sufficient service charge disclosures. (Def.'s CSF ¶¶ 20, 24.) As discussed above, between January 2006 and January 2009, the BEO contracts (and therefore the identical

---

[19] This distinguishes wedding contracts from banquet contracts: banquet contracts contained an adequate disclosure from the beginning of the class period (as discussed above), while wedding contracts contained no disclosure whatsoever until March 2010.

WEO contracts) contained disclosures that are insufficient for purposes of § 481B-14. Beginning in January of 2009, the BEO contracts (and therefore WEO contracts) included a Terms and Conditions sheet with the disclosure that "[t]his service charge is not a gratuity and is the property of the hotel to cover the discretionary costs of the event." (Def.'s CSF, Dowse Decl., Ex. J.) The Court found in its 12/2/11 Order that this provision is sufficient for purposes of the disclosure requirement in § 481B-14. (12/2/11 Order at 17 n. 14.) Plaintiffs appear to agree. (See Pl.'s Mot. at 17.) Thus, beginning in January of 2009, wedding customers were provided with adequate disclosure regarding service charge disbursement. Because the Court concludes that the disclosures made in BEOs and WEOs prior to January of 2009 were insufficient, the Court GRANTS Plaintiffs' Motion and DENIES Defendants' Counter-Motion with respect to service charges collected by Defendants at weddings for the period between January 2006 and January 2009.

    **D.    In-Room Dining**

        In its 12/2/11 Order, the Court granted summary judgment in Plaintiffs' favor for service charges collected from Defendants' in-room dining service for the period of January 2006 to March 2011. (12/2/11 Order at 20.) In their instant motion, Plaintiffs seek judgment for the additional period from March of 2011 to January of 2012. (Pl.'s Mot. at 18.)

Defendants counter that, beginning in August of 2009, in-room dining menus contained a service charge disclosure that read, in relevant part, "[s]ervice charges include gratuities, taxes and other hotel service charges."[20] (Def.'s CSF ¶¶ 26, 29.) Defendants assert that this disclosure is sufficient for purposes of § 481B-14. The Court disagrees.

Leaving aside the fact that this Court has already ruled that Plaintiffs have established Defendants' liability as to in-room service for the period of January 2006 to March 2011,[21] the disclosure Defendants rely upon is materially identical to the disclosure used in their BEOs and WEOs prior to January 2009 and must fail for the same reasons. As discussed above, the disclosure that service charges "include gratuities" is insufficient for purposes of § 481B-14. It utterly fails to

---

[20] The parties agree that, in January of 2012, the menus were revised to include a sufficient disclosure stating, in relevant part, that "[t]his service charge is not a gratuity and is the property of the hotel to cover discretionary costs" and that "[a] portion of the service charge is being used to pay for costs and expenses other than wages and tips of employees." (Pl.'s CSF ¶ 30; Def.'s CSF ¶ 30.)

[21] Defendants argue in their Counter-Motion that the Court's grant of partial summary judgment as to Defendants' liability with respect to in-room dining was based upon Defendants' mistaken statement in their concise statement of facts that they did not dispute that they failed to provide adequate disclosures in room service menus for the time period at issue. (Counter Mot. at 10.) As discussed below, however, even considering the disclosure beginning in August 2009 that Defendants mistakenly omitted from their previous filings, Plaintiffs are still entitled to summary judgment with respect to in-room dining from the beginning of the class period until January 2012.

adequately apprise customers what portion, if any, of the service charge is being paid to service employees in lieu of a gratuity. Indeed, in concluding in its 12/2/11 Order that Defendants failed to provide adequate disclosures for in-room dining until March 2011, this Court made a point of noting that the room service checks contained the statement "Gratuity Included!" (12/2/11 Order at 20.) The Court believed then, as it does now, that a statement indicating that the service charge includes the gratuity wholly fails to satisfy the requirements of § 481B-14. The Court therefore GRANTS Plaintiffs' Motion and DENIES Defendants' Motion and Counter-Motion as to in-room dining.

In sum, as to Count V, the Court GRANTS Plaintiffs' Motion and DENIES Defendants' Motion and Counter-Motion and concludes that Plaintiffs have established Defendants' liability under § 481B-14 as to (1) long-form conventions from January 31, 2006 to May of 2007; (2) short-form conventions from January 31, 2006 until December 31, 2008; (3) weddings from January 31, 2006 to January 2009; and (4) in-room dining from January 31, 2006 to January 2012.[22/] The Court GRANTS Defendants' Motion and Counter-

---

[22/] The Court notes that Defendants make a cursory argument in their Counter Motion as to the existence of "oral and other individual disclosures." (Counter Mot. at 11-12.) The Court is unconvinced, however, as to the sufficiency of any such disclosures, and Defendants have failed to demonstrate that these supposed oral disclosures were given on a regular basis for any particular type of event. Indeed, the evidence Defendants have produced regarding these disclosures indicates that they were

(continued...)

Motion and DENIES Plaintiffs' Motion as to banquets.

## E.   Equitable Justification

Finally, Defendants argue that even if the Court grants summary judgment to Plaintiff on some or all of the claims, Defendants are not subject to double damages under Haw. Rev. Stat. § 388-10(a) because their "good-faith effort" to provide the necessary disclosures constitutes an "equitable justification" under that provision. (Def.'s Counter Mot. at 26.)

As noted above, pursuant to Haw. Rev. Stat. § 388-10(a), an employer who fails to pay wages in violation of any provision of Chapter 388 without equitable justification is

---

[22]/(...continued)
only given if a customer expressly asked about the distribution of the service charge. For example, Defendants have produced the declaration of Gale Fujiwara, Director of Catering and Conference Services at the Hotel, in which she states that "[i]f [conference, wedding, or banquet] clients ask about the service charge, staff members are instructed to explain that a portion of the service charge is paid out as a gratuity for the servers, and a portion is retained by the Hotel for administrative costs." (Def.'s CSF, Dowse Decl., Ex. S at ¶ 3.) Similarly, Jana Lynn Arai, Manager of In-Room Dining at the Hotel, makes an identical statement about oral disclosures given to in-room dining customers. (Def.'s CSF, Dowse Decl., Ex. T at ¶ 3.) Thus, it appears oral disclosures were only made if the customer expressly asked about the distribution of the service charge. Section 481B-14 requires disclosure whenever less than all of the service charge is distributed to food and beverage servers; this requirement is imposed regardless of whether a customer actually asks for the information. Moreover, even were Defendants able to show that these disclosures were given to every customer, they are nevertheless insufficient for purposes of § 481B-14. Thus, to the extent Defendants attempt to suggest that they have satisfied the requirements of § 481B-14 via oral and other individual disclosures, the Court disagrees.

liable to the employee for double damages. The Hawaii Supreme Court has held that violations of § 481B-14 may be enforced through § 388-10. <u>Villon</u>, 306 P.3d at 188. The burden of establishing an equitable justification falls on the employer. <u>Arimizu v. Financial Sec. Ins. Co., Inc.</u>, 679 P.2d 627, 631-32 (Haw. App. 1984).

The legislative history of § 388-10 sheds little light on the meaning of the term "equitable justification." The legislature amended § 388-10 in 1977 to add the civil penalty, including the language regarding an "equitable justification." <u>See</u> Hse. Stand. Comm. Rep. No. 205, in 1977 House Journal, at 1374-75; Sen. Stand. Comm. Rep. No. 727, in 1977 Sen. Journal, at 1160. During subsequent revisions of the law, the civil penalty was discussed as applicable to employers who withhold wages "without valid reason." Hse. Stand. Comm. Rep. No. 1433-94, in 1994 House Journal, at 1451. Similarly, in 1999, the civil penalty was characterized as applicable for "unjustified wage withholdment [sic]." Sen. Comm. Rep. No. 643, in 1999 Sen. Journal, at 354.

While there is scant Hawaii law defining the term "equitable justification," the Intermediate Court of Appeals of Hawaii has cited with apparent approval Louisiana cases defining the term as "a good faith non-arbitrary defense." <u>Arimizu</u>, 679 P.2d at 631 n. 4 (citing <u>Carriere v. Pee Wee's Equipment Co.</u>, 364

So.2d 555, 557 (La. 1978)). The Arimizu Court emphasized that "[t]he public policy that employees be paid promptly . . . permeates Part I of HRS Chapter 388 and the legislative intent in [the] enactment of HRS § 388-10(a)." Id. at 631. As such, it appears the penalty must be assessed unless the employer can put forth evidence of a valid, or good faith, non-arbitrary reason or justification for withholding wages in contravention of Hawaii law. See Id. at 632 (rejecting a claim of equitable justification where the employer argued that it had a "good faith" belief that wages could be withheld because of an alleged setoff claim against the employee); Gurrobat v. HTH Corp., 323 P.3d 792, 808-09 (Haw. 2014) (finding no equitable justification where defendants argued that their withholding of service charges conformed to an industry-wide trend among Hawaii hotels).

Here, Defendants argue that their "good faith" effort to make service charge disclosures constitutes an equitable justification under § 388-10(a). Defendants assert that, for the periods during which they made an attempt to provide service charge disclosures - albeit insufficiently - they are entitled to an equitable justification defense.

Specifically, for conventions and weddings from January 2006 to January 2009, and for in-room dining beginning in August 2009, Defendants began using a service charge disclosure stating that "[s]ervice charges include gratuities, taxes and other hotel

service charges." Defendants argue that this was a "good faith" attempt to comply with the disclosure requirements of § 481B-14. The Court disagrees. As discussed above, a disclosure stating that service charges include gratuities is exactly the opposite of what § 481B-14 requires, and entirely fails to effectuate the statute's purpose. Defendants cannot, therefore, credibly argue that including this disclosure was a good faith effort to comply with the law. Importantly, as was the case in <u>Arimizu</u>, Defendants have introduced no evidence suggesting they made any attempts to verify whether any of their disclosures were actually legally proper. <u>See</u> <u>Arimizu</u>, 679 P.2d at 111.

Moreover, the staggered, piecemeal process through which Defendants revised their various disclosures to come into compliance with the law also belies their claim that their insufficient disclosures were made in good faith. For example, since the beginning of the class period in January 2006, banquet contracts contained a disclosure stating that service charges will be used "to offset administrative expenses for supervisory, sales, and other banquet personnel." (Def.'s CSF, Dowse Decl., Ex. C.) As discussed above, this disclosure is sufficient because it informs the customer that the service charge was being used to pay for administrative expenses, rather than the wages and tips of food and beverage servers. Notwithstanding their apparent ability to provide an adequate disclosure in banquet contracts as

early as January 2006, Defendants failed to provide similarly adequate disclosures to long-form convention customers until May of 2007, to short-form convention customers until December of 2008, to wedding customers until January 2009, or to in-room dining customers until January 2012. (Def.'s CSF, Dowse Decl., Exs. O, J, R.) Defendants were therefore capable of making adequate disclosures as early as January 2006, yet they failed to do so uniformly for all types of events. This hardly constitutes a "good faith" effort to comply with the law. The Court is therefore unpersuaded that Defendants' insufficient disclosures were made in good faith. Defendants' Counter-Motion is DENIED as to Defendants' arguments regarding equitable justification.

## II.  Count II: Intentional Interference with Advantageous Relations

Plaintiffs' second count asserts that the Defendants' failure to remit the total proceeds of service charges to food and beverage servers "constitutes unlawful intentional interference with contractual and/or advantageous relationships that exist between these employees and the defendants' customers under state common law." (Second Am. Compl. Count II.) Hawaii recognizes two separate torts: (1) tortious interference with contractual relations and (2) the tort of intentional or tortious interference with prospective business advantage. Meridian Mortgage Inc. v. First Hawaiian Bank, 122 P.3d 1133, 1145-46 (Haw. App. 2005); Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe

32

<u>Transp. Co. Inc.</u>, 982 P.2d 853, 887-88 (1999), <u>superceded by</u>
<u>statute on other grounds</u>. As this Court stated in its December
10, 2010 Order Granting in Part and Denying in Part Defendants'
Motion to Dismiss, because there is no claim that any contract
existed between Plaintiffs and the customers of the Hotel,
Plaintiffs appear to be bringing a claim for tortious
interference with prospective business advantage. (Doc. No. 118
("12/10/10 Order") at 21-22.)

To state a claim for tortious interference with
prospective business advantage, a plaintiff must allege: (1) the
existence of a valid business relationship or a prospective
advantage or expectancy that is reasonably probable of maturing
into a future economic benefit to the plaintiff; (2) knowledge of
the relationship, advantage, or expectancy by the defendant; (3)
purposeful intent to interfere with the relationship, advantage
or expectancy; (4) legal causation between the act of
interference and the impairment of the relationship, advantage,
or expectancy; and (5) actual damages. <u>See</u> <u>Minton v. Quintal</u>, 317
P.3d 1, 25 (Haw. 2013).

The first element requires "a colorable economic
relationship between the plaintiff and a third party with the
potential to develop into a full contractual relationship. The
prospective economic relationship need not take the form of an
offer but there must be specific facts proving the possibility of

future association." <u>Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc.</u>, 148 P.3d 1179, 1218 (Haw. 2006) (quoting <u>Locricchio v. Legal Servs. Corp.</u>, 833 F.2d 1352, 1357 (9th Cir. 1987)) (quotation marks and emphasis omitted).

Defendants argue that Plaintiffs fail to establish this first element because there is no evidence that the relationship between Plaintiffs and Hotel customers had the potential to develop into a "full contractual relationship." (Def.'s Mot. at 24.) The Hawaii Supreme Court has made clear, however, that "[i]t is not necessary that the prospective relation be expected to be reduced to a formal, binding contract." <u>Haw. Med. Ass'n</u>, 148 P.3d at 1219 (quoting Restatement (Second) of Torts § 766B cmt. c. (1979)). Indeed, the prospective relation may include "prospective quasi-contractual or other restitutionary rights or even the voluntary conferring of commercial benefits in recognition of a moral obligation." <u>Id.</u> The provision of a gratuity in exchange for food and beverage service is arguably just such a "voluntary conferring of commercial benefits in recognition of a moral obligation." The Court therefore concludes that there is at least a question of fact as to whether a colorable economic relationship existed between Plaintiffs and the Hotel customers.

The second element of the tortious interference with business advantage claim mandates that the defendant have either

34

"actual knowledge" of the potential economic relationship, or "knowledge of facts which would lead a reasonable person to believe that such interest exists." Kutcher v. Zimmerman, 957 P.2d 1076, 1088 n.16 (Haw. App. 1998) (citation and internal quotation marks omitted). Here, Defendants were aware that Plaintiffs were in their employ for the purpose of providing food and beverage services to Hotel customers. (See Def.'s CSF ¶¶ 1-2.) Defendants therefore knew that an economic relationship was likely to come into existence between Plaintiffs and Hotel customers: a reasonable person would be aware of the general practice of providing gratuities to food and beverage servers. The second element of the claim is therefore satisfied.

As to the third element, intent, it "denotes purposefully improper interference," and "requires a state of mind or motive more culpable than mere intent." Haw. Med. Ass'n, 148 P.3d at 1218 (internal citations omitted). Specifically, Plaintiffs must prove that Defendants "either pursued an improper objective of harming [them] or used wrongful means that caused injury in fact." Id. (quoting Omega Envtl., Inc. v. Gilbarco, Inc., 127 F.3d 1157, 1166 (9th Cir. 1997)). Here, Plaintiffs argue that Defendants' retention of the service charges in violation of Haw. Rev. Stat. § 481B-14 amounts to a use of "wrongful means." The Court agrees. An improper means may be demonstrated where the interference involved "violations of

statutes, regulations, or recognized common-law rules." <u>Kutcher</u>,
957 P.2d at 1089 (citing <u>Leigh Furniture & Carpet Co. v. Isom</u>,
657 P.2d 293, 308 (Ut. 1982)). As discussed above, Defendants'
withholding of service charges without providing adequate
disclosures was clearly in violation of state law. Thus, the
third element of Plaintiffs' claim for tortious interference with
advantageous relations is satisfied.

    Finally, however, as to the elements of legal causation
and damages, Defendants correctly point out that Plaintiffs have
failed to put forth any evidence to establish these elements of
the claim. As to legal causation, Plaintiffs assert that
"Defendants' act of withholding a portion of the service charges
caused Plaintiffs to lose tip revenue." (Pl.'s Opp'n at 15.)
Similarly, Plaintiffs allege in their Second Amended Complaint
that "customers who would otherwise be inclined to leave an
additional gratuity . . . frequently do not do so because they
erroneously believe that the servers are receiving the entire
service charge imposed by the hotel." (Second Am. Compl. ¶ 13.)
Plaintiffs do not, however, support this allegation with any
evidence. Specifically, Plaintiffs have not come forth with any
evidence that Hotel customers in fact failed to leave gratuities
or left smaller gratuities because of Defendants' actions.
Plaintiffs cite to the affidavit of Stephen West, a food and
beverage server at the Hotel, in support of their claim; however,

Mr. West's statements merely establish that the Hotel had a practice of pooling all service charges collected in a week. (See Pl.'s Opp'n at 15 (citing to Doc. No. 205, Ex. 1 (Aff. of Stephen West) at ¶ 7.) Mr. West does not provide any evidence to support Plaintiffs' claims that customers left smaller tips because of Defendants' acts. (See id.) Moreover, there is no evidence in the record of the damages Plaintiffs assert are associated with this claim. The Court therefore GRANTS Defendants' Motion as to Count II.

## III. Count III: Breach of Implied Contract

Plaintiffs' third count asserts that Defendants breached an implied contract with Hotel customers "that the employees would receive [the service charges], for which the employees are third party beneficiaries."[23/] (Second Am. Compl. Count III.) To state a claim for breach of an implied contract, a plaintiff must allege the breach of "an agreement in fact," which is not expressed, but "is implied or presumed" based upon the actions of the parties. Durette v. Aloha Plastic Recycling, Inc., 100 P.3d 60, 74 (Haw. 2004); Kemp v. State of Haw. Child Support Enforcement Agency, 141 P.3d 1014, 1038 (Haw. 2006).

The "essential element of an implied contract" is a "mutual intent to form a contract " that is implied from the

---

[23/] In its 12/10/10 Order, the Court dismissed the portion of Count III premised upon an implied contract between Plaintiffs and Defendants.

"actions of the parties." <u>Kemp</u>, 141 P.3d at 1038. Thus, in order to bring their claim, Plaintiffs must present evidence of actions taken by Defendants and the Hotel customers that would imply a mutual intent to form a contract to distribute service charges to service employees. Plaintiffs have failed to do so. Plaintiffs have provided evidence that Defendants added a service charge to food and beverage bills, failed to distribute it in full to food and beverage employees, and failed to provide adequate notice regarding its distribution. Plaintiffs have not, however, provided evidence of any actions by Defendants or Hotel customers from which an inference could be drawn that they mutually intended to form a contract requiring Defendants to remit the service charge in full to Plaintiffs. Plaintiffs' claim for breach of implied contract must therefore fail. <u>See</u> <u>Kemp</u>, 141 P.3d at 1038. The Court GRANTS Defendants' Motion as to Count III.

## IV.  Count IV: <u>Unjust Enrichment</u>

Finally, Plaintiffs' fourth count asserts that Defendants' retention of the service charges without proper disclosure constitutes unjust enrichment under Hawaii common law. To recover on an unjust enrichment claim, a plaintiff must prove: (1) the defendant received a benefit without adequate legal basis; and (2) unjustly retained the benefit at the expense of the plaintiff. <u>Chapman v. Journal Concepts, Inc.</u>, 2008 WL

38

5381353, at *21 (D.Haw. 2008) (citing <u>Small v. Badenhop</u>, 701 P.2d 647, 654 (Haw. 1985); <u>Durrette v. Aloha Plastic Recycling, Inc.</u>, 100 P.3d 60, 61 (Haw. 2004). Unjust enrichment is a "broad and imprecise term." <u>Durrette</u>, 100 P.3d at 72 (internal citation and quotation marks omitted). In reviewing unjust enrichment claims, courts must be guided by the "underlying conception of restitution, the prevention of injustice." <u>Id.</u>

Importantly, the absence of an adequate remedy at law is a necessary prerequisite to maintaining an unjust enrichment claim. <u>Porter v. Hu</u>, 169 P.3d 994, 1007 (Haw. App. 2007). Here, Plaintiffs have an adequate remedy at law in the form of their claim for unpaid wages pursuant to Haw. Rev. Stat. § 481B-14 and Chapter 388. Plaintiffs concede as much, but nevertheless argue that their claim for unjust enrichment should go forward because "Defendants buried clear disclosures in small print within lengthy boilerplate agreements, thereby misleading the Defendants' customers into believing that the full amount of the service charge is being remitted to the Plaintiff class[,]" and that this "misleading and unjust" action entitles Plaintiffs to equitable relief because they performed work for which Defendants were unjustly enriched. (Pl.'s Opp. at 16.)

As discussed above, however, the Court has already rejected Plaintiffs' arguments regarding the placement and prominence of the service charge disclosures in its 12/2/11

Order. Moreover, even assuming some disclosures were misleading or buried, this has no bearing on the fact that, as Plaintiffs concede, they already have an adequate remedy at law for Defendants' unlawful withholding of the service charges without adequate disclosure. Plaintiffs' claim for unjust enrichment must therefore fail. See Porter, 169 P.3d at 1007; see also Davis v. Four Seasons Hotel Ltd., 2011 WL 5025521 at *6 (D. Haw. 2011) (dismissing similar service charge plaintiffs' unjust enrichment claims because the plaintiffs' already had an adequate remedy at law under Haw. Rev. Stat. Chapter 388). Defendants' Motion is GRANTED as to Count IV of the Second Amended Complaint.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART the motions as follows:

The Court GRANTS Defendants' Motion for Partial Summary Judgment as to Counts II, III, and IV of the Second Amended Complaint.

The Court GRANTS Plaintiffs' Renewed Motion for Summary Judgment and DENIES Defendants' Motion for Partial Summary Judgment and Counter-Motion for Summary Judgment and concludes that Plaintiffs have established Defendants' liability as to Count V for (1) long-form conventions from January 31, 2006 to May of 2007; (2) short-form conventions from January 31, 2006 until December 31, 2008; (3) weddings from January 31, 2006 to

January 2009; and (4) in-room dining from January 31, 2006 to January 2012. The Court GRANTS Defendants' Motion for Partial Summary Judgment and Counter-Motion for Summary Judgment and DENIES Plaintiffs' Motion for Summary Judgment as to the portion of Count V premised upon banquets.

Finally, the Court DENIES Defendants' Counter-Motion as to equitable justification.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 12, 2014



_____
Alan C. Kay
Senior United States District Judge

Wadsworth v. KSL Grand Wailea Resort, Inc., et al., Civ. No. 08-00527 ACK-RLP, Order Granting in Part and Denying in Part Plaintiffs' Renewed Motion for Summary Judgment, Defendants' Motion for Partial Summary Judgment, and Defendants' Counter-Motion for Summary Judgment.